**Joseph HARRAH, d/b/a Photography by Joseph, Plaintiff,**

v.

**MINNESOTA MINING AND MANUFACTURING COMPANY and Roadway Package Systems, Inc. (RPS), Defendants.**

**Civ. A. No. 91–1001.**

United States District Court,
D. New Jersey.

Nov. 6, 1992.

314

Ostrager, Fieldman, Zucker, Kachmar and Nirenberg by George M. Kachmar, III, Hackensack, NJ, for plaintiff.

Pellettieri, Rabstein and Altman by Mel Narol, Princeton, NJ, for defendant Minnesota Min. and Mfg. Co.

Kroll & Tract by George W. Wright, Newark, NJ, for defendant Roadway Package Systems, Inc.

## OPINION

BISSELL, District Judge.

This action was first filed on January 9, 1991 in the Law Division of the New Jersey Superior Court, Middlesex County. The action was filed by plaintiff Joseph Harrah, a professional photographer d/b/a as "Photography by Joseph" in South Plainfield, New Jersey, against Minnesota Mining and Manufacturing Company ("3M"), a corporation organized under the laws of Minnesota. The original complaint sought damages for defendant 3M's negligence in failing to

provide for safe delivery or return of photographs which plaintiff had loaned to defendant for defendant's use in promoting a new film product.

On March 5, 1991, pursuant to 28 U.S.C. § 1446(b), defendant 3M filed a notice of removal to federal district court. On January 23, 1992, plaintiff filed an amended complaint adding as a defendant Roadway Package Systems, Inc. ("RPS"), the carrier service which defendant 3M had entrusted with plaintiff's photographs. This complaint alleged that RPS was negligent in failing to ensure safe delivery of the photographs to plaintiff.

On February 20, 1992, 3M filed a cross-claim against RPS, alleging that RPS's negligence in attempting to return plaintiff's property was the direct and proximate cause of the loss or non-delivery to plaintiff that is the basis for the instant action and demanding that RPS indemnify 3M for all costs and expenses associated with the instant action. (Defendant 3M's Cross-claim at 1, 2). RPS made an offer of judgment to plaintiff in the amount of $100.00 on April 28, 1992. (Aff. of Paul Stritmatter, RPS Claims Manager, Defendant RPS's motion for summary judgment dismissing the amended complaint, Exh. E). Plaintiff rejected the offer on May 11, 1992. (*Id.*, Exh. F).

On August 27, 1992, plaintiff filed a motion seeking permission to file a second amended complaint adding as defendants N. Ciardiello, an independent contractor from whom RPS had rented a delivery truck, and Nate Gordon, whom Ciardiello had hired as a temporary driver.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, based on diversity of citizenship of the parties and the fact that the amount in controversy exceeds $50,000.00. Presently before the Court is defendant RPS's motion for summary judgment.

### FACTS

Plaintiff first met Lorin Robinson, 3M's Marketing Communications Supervisor in the PhotoColor Systems Division, through business contacts with the National Institute for Exploration ("NIE"). (Plaintiff's Interrog. Answers, ¶ 21). At that time, Mr. Robinson suggested plaintiff should send him some samples of his work, which plaintiff did. (*Id.*, ¶ 2). Upon reviewing the samples, Mr. Robinson sent plaintiff a letter, dated September 20, 1989, containing an offer to have plaintiff do some work for defendant in conjunction with the contemplated marketing of a new print film, ScotchColor Film ISO 100. (Plaintiff's Br., Exh. A). 3M was commissioning various photographers to take pictures with the new film and was intending to use the resulting photos at a Photo Marketing Association ("PMA") Show in Las Vegas in February 1990. The terms of the letter stated that plaintiff would be provided with film and that 3M would pay for processing and printing. The letter further provided that the photos would remain property of plaintiff, but that 3M would have the right to purchase as many of the photographs as it wished at a mutually agreeable price. (*Id.*)

Pursuant to the offer contained in the letter, plaintiff hired models and traveled to various sites where he shot photographs using nine rolls of the new film supplied by defendant 3M. Sometime between receiving the offer in September and the date of the PMA Show in February, plaintiff sent the exposed film to 3M, which developed the film and made the images into photographs. (*Id.*, ¶ 8). 3M used seven of these photographs at the PMA Show in Las Vegas. (*Id.*) When plaintiff spoke with Lorin Robinson at the show, Robinson indicated to him that 3M was considering using the photographs and images in other forms of advertisement for their new product line. (*Id.*)

On March 8, 1990, 3M gave plaintiff's photos to an agent of RPS for delivery to plaintiff. (Plaintiff's Br., Exh. E). RPS had contracted with N. Ciardiello, an independent contractor in the trucking business, to deliver the photographs to plaintiff. Ciardiello had in turn hired Nate Gordon to drive the delivery truck. (Second Am.Compl., ¶¶ 2–3). RPS' Delivery Record for March 14, 1990 indicates that a package

containing the photographs was left at 133 Hamilton Street, an address at which plaintiff no longer resided. (Plaintiff's Br., Exh. E). There is no signature indicating that the package was left with any person at that address, despite the fact that the Delivery Record contains signatures for all other packages delivered on that date. (*Id.*)

At the time the package was delivered to 133 Hamilton Boulevard, South Plainfield, New Jersey, plaintiff had already moved from that address to a new address at 20B South Plainfield Avenue, South Plainfield, New Jersey. (Exh. B, Plaintiff's Answers to Interrogs., ¶ 28). 3M did not attempt to contact plaintiff to confirm a delivery address prior to giving the package of photographs to RPS for delivery. (Plaintiff's Br. at 2). Instead, records show, 3M indicated that delivery should be to plaintiff's old address, a building which was unoccupied at the time. (*Id.* at 3). Nate Gordon left the package at plaintiff's old address despite the fact that the building, according to plaintiff, was clearly unoccupied, as evidenced by the overgrown grass surrounding it.

As a result of these events, plaintiff never received the package of photographs from defendant. Plaintiff asserts that he first became aware that 3M had attempted to return the photographs when he called in June or July 1990 to inquire as to the whereabouts of the images and was informed by Mr. Robinson that 3M had returned them. (Exh. B, Plaintiff's Answers to Interrogs., ¶ 8). According to plaintiff, when he informed Mr. Robinson that he had not received the package, Robinson told him that the images were worth at least $1,500.00 apiece and advised him to put an ad in the local newspaper offering a reward for return of the photos. (*Id.*, ¶ 15). Robinson stated that 3M would pay the cost of the ad and would supply the reward money for the photos. Plaintiff placed the ad but never received a response. (*Id.*)

Plaintiff maintains that he is entitled to damages in the amount of $324,000.00, the cost of 216 images at $1,500.00 per image.

(*Id.*, ¶ 47(a)). In addition to relying on Mr. Robinson's valuation of the images, plaintiff submits evidence from a book by Michal Heron, whom plaintiff asserts is an expert in the field of photography. (*Id.*, Exh. B). The proffered excerpt from Heron's book *How To Shoot Stock Photos That Sell* indicates that photos similar to those taken by plaintiff are typically worth $1,500.00 apiece. (*Id.*)

## SUMMARY JUDGMENT ANALYSIS

Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.) (*en banc*), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

In deciding a motion for summary judgment, the facts must be viewed in the light most favorable to the nonmoving party and any reasonable doubt as to the existence of a genuine issue of fact is to be resolved against the moving party. *Continental Insurance Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). The moving party has the burden of establishing that there exists no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court has stated that, in applying the criteria for granting summary judgment,

> the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict....

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. (*Id.*)

Defendant RPS maintains that it is entitled to summary judgment dismissing the amended complaint and all cross-claims against RPS because plaintiff failed to file a timely claim with RPS as required by the tariffs RPS filed with the Interstate Commerce Commission. RPS maintains that, since those tariffs are the exclusive provisions governing RPS' liability, plaintiff's claim must be dismissed.

■ The Carmack Amendment to the Interstate Commerce Act ("the Act"), 49 U.S.C. § 11707, formerly 49 U.S.C. § 20(11), sets forth a comprehensive scheme governing the rights of shippers and consignees and the responsibilities and liabilities of carriers. Under the Carmack Amendment, a tariff filed by an interstate carrier constitutes the contract between the parties as a matter of law. *Aero Trucking, Inc. v. Regal Tube Co.*, 594 F.2d 619 (7th Cir.1979); *E.W. Bowman, Inc. v. Norfolk and Western Ry. Co.*, 483 F.Supp. 1322, 1324 (W.D.Pa.1980). The rights of the parties cannot be enlarged by contract or tort of the carrier. *See, e.g. Keogh v. Chicago & Northwestern Railway Co.*, 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922); *Dayton Coal & Iron Co. v. Cincinnati, New Orleans & Texas Pacific Ry. Co.*, 239 U.S. 446, 36 S.Ct. 137, 60 L.Ed. 375 (1915).

On March 8, 1990, the date on which RPS accepted packages from 3M which included the package intended for plaintiff, RPS was operating pursuant to Tariff No. ICC RPSI 200–B. (Defendant's Br. at 1). The tariff contains several items relevant to the dispute in the instant case. Concerning the procedure for filing claims, provisions on page "9" state:

> *Item 520:* Filing of claims: 1. All claims for loss of or damage to property tendered to the carrier for transportation in interstate or intrastate commerce must be filed in writing. . . .

> *Item 560:* Time limit for filing claims: Claims must be filed in writing with the carrier within nine (9) months from the date of delivery or, in the event that carrier failed to make delivery, within nine (9) months after a reasonable period of time for delivery was elapsed. . . . If claims are not filed . . . in accordance with the foregoing provisions, carrier will not be liable and such claims will not be paid.

Defendant now asserts that compliance with these provisions is a prerequisite for eligibility to file suit against RPS. (Defendant's Br. at 3). Furthermore, defendant asserts that any liability RPS may have to plaintiff is limited to $100.00, since the shipper did not declare any excess value in accordance with the relevant portion of the tariff, located on page "14." The tariff provides:

> *Item 1100:* 2. The rates for delivery of packages, released to a value not exceeding $100, shall be the following:

| WEIGHT NOT TO EXCEED (In Pounds) | ZONE 5 |
| --- | --- |
| * * * | * * * |
| 3 | $2.53 |

According to defendant RPS, the package containing plaintiff's photos, Package No. 1852508 on Invoice No. 2323794, was shipped at a base rate of $2.53. This indicates that 3M did not declare any value in excess of $100.00 for the package. (Defendant's Br. at 3).

Plaintiff asserts that these tariffs do not apply to the instant case, since the claim is being brought as a common law action for negligence. However, this assertion cannot be sustained for two reasons. First, plaintiff has not made the requisite showing in tort that defendant RPS owed plaintiff any particular duty, since the relationship at issue was between the shipper, 3M, and the carrier, RPS. Second, common law actions against interstate carriers are preempted by the Interstate Commerce Act.

It is a well established principle of tort law that a plaintiff seeking to maintain a negligence action must show that the defendant breached some duty owed to the plaintiff and that the breach was the proximate cause of the injury at issue. *Prosser and Keeton on Torts*, Ch. 5, § 30 at 164 (5th ed. 1984). The fact that a defendant may have behaved in a negligent manner is insufficient to establish liability; plaintiff must show that the defendant was under a duty not to behave in a particular way toward that plaintiff. (*Id.*) In this case, plaintiff has offered no evidence to show that defendant RPS, who clearly owed some duty to the shipper 3M by virtue of the contract for interstate carriage, also owed some common law duty to plaintiff as recipient of the package and owner of the contents thereof. Therefore, plaintiff does not have standing to maintain an action against defendant RPS in tort.

Furthermore, the Supreme Court has held that, in most cases, claims asserted against interstate carriers under state common law or statute, including claims for misdelivery or nondelivery, are preempted by the Interstate Commerce Act. *Peyton v. Railway Express Agency*, 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525, *reh. denied*, 318 U.S. 798, 63 S.Ct. 527, 87 L.Ed. 1162 (1942) (Court held that application of common law would open the floodgates of confusion that the Interstate Commerce Act was designed to prevent); *American Railway Express Co. v. Levee*, 263 U.S. 19, 44 S.Ct. 11, 68 L.Ed. 140 (1923) (failure to deliver). Thus, any negligence claim plaintiff Harrah would have against RPS would be governed by the Interstate Commerce Act.

This Court must therefore consider whether plaintiff has standing to sue under that Act. Cases interpreting the Act have confined the right to sue to shippers (*Amber v. Davis*, 221 Mo.App. 448, 282 S.W. 459 (1926)) or consignors (*St. Louis S.F.R. Co. v. Ozark White Lime Co.*, 177 Ark. 1018, 9 S.W.2d 17 (1928)), holders of the bill of lading issued by the carrier (*Pennsylvania R. Co. v. Olivit Bros.*, 243 U.S. 574, 37 S.Ct. 468, 61 L.Ed. 908 (1917)) or persons beneficially interested in the shipment although not in possession of the actual bill of lading (*Bowden v. Philadelphia, B. & W.R. Co.*, 28 Del. 146, 91 A. 209 (1914)), buyers or consignees (*Perkel v. Pennsylvania R.R. Co.*, 148 Misc. 284, 265 N.Y.S. 597 (1933)), or assignees thereof (*J.H. Walker Co. v. Atlantic C.L.R. Co.*, 38 Ga.App. 284, 143 S.E. 782 (1928)).

In the instant case, plaintiff is classifiable as a consignee. Black's Law Dictionary defines a consignee as "[o]ne to whom goods are consigned ... one to whom the carrier may lawfully make delivery in accordance with the contract of carriage." *Black's Law Dictionary* at 380 (4th ed. Rev.1968). Since plaintiff was the one to whom the carrier was supposed to make delivery pursuant to the terms of RPS' agreement with 3M, plaintiff would have standing as a consignee to sue under the Interstate Commerce Act. Furthermore, because plaintiff is a consignee, he is legally bound by the provisions of the tariff, since the tariff constitutes the contract between the parties to a transaction under the Interstate Commerce Act. *Keogh v. Chicago & N.W. Ry.*, 260 U.S. 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183 (1922).

Plaintiff asserts that he should not be bound by the provisions of the tariff because he was not a party to the contract between 3M and RPS and therefore was not aware of the tariff's provisions. However, "consignors, carriers and consignees are all presumed to know the existence, effect and applicability of tariff provisions." *Atchison, T. & S.F. Ry. Co. v. Springer*, 172 F.2d 346, 349 (7th Cir.1949) (citing *American Railway Express Co. v. Daniel*, 269 U.S. 40, 42, 46 S.Ct. 15, 16, 70 L.Ed. 154 (1925); *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Fink*, 250 U.S. 577, 581–82, 40 S.Ct. 27, 27–28, 63 L.Ed. 1151 (1919)). Plaintiff, as a consignee, is bound by the tariff in effect for the transaction between 3M and RPS. In *Howe v. Allied Van Lines*, 622 F.2d 1147 (3d Cir.1980), *cert. denied*, 449 U.S. 992, 101 S.Ct. 528, 66 L.Ed.2d 289 (1980), the Third Circuit held that military servicemen who sued household goods carriers for

damage to goods in transit were limited to the remedies available under the contract that had been negotiated by the government and the carriers. In the instant case, *Howe* would indicate that plaintiff is bound by 3M's failure to declare a value in excess of $100.00 for the package. The fact that plaintiff was not in possession of a bill of lading for the goods as the plaintiffs in *Howe* were does not change this result, since possession of a bill of lading is not determinative of a plaintiff's rights or status under the Carmack Amendment to the Interstate Commerce Act. *Bowden v. Philadelphia, B. & W.R. Co.*, 28 Del. 146, 91 A. 209 (1914).

Based on the foregoing analysis regarding the applicability of tariff provisions to all aspects of a carrier's liability, plaintiff is bound both by the tariff provisions limiting the amount of RPS' liability and by Tariff No. ICC RPSI 200–B governing the time period in which a claimant may bring an action against RPS. Plaintiff claims that, since he was not a party to the agreement between 3M and RPS, he cannot be bound by the time limitation. However, the Supreme Court's holdings in *Keogh* that tariff provisions are the conclusive statement of the rights of the parties and in *American Railway Express* that consignors, carriers and consignees are deemed to know the provisions of the tariffs, are designed to ensure the type of uniformity in the regulation of interstate commerce that Congress intended when it added the Carmack Amendment to the Interstate Commerce Act. Thus, plaintiff, as a claimant against RPS, is bound by the tariffs regarding claims against the carrier. These tariffs require, *inter alia*, that claims against RPS be filed within a nine-month period.

As a practical matter, the Court takes note of the fact that plaintiff became aware that the package carried by RPS had been lost four to five months before the time to file a claim against the company expired under Tariff No. ICC RPSI 200–B. Furthermore, plaintiff had retained counsel by October 1990. Thus, both plaintiff and his counsel had several months in which to inquire into the relevant procedures for filing a claim against RPS and to comply with those procedures.

Plaintiff has moved this Court for permission to file a second amended complaint adding N. Ciardiello, the independent contractor RPS hired to deliver the package to plaintiff, and Nate Gordon, the delivery truck driver hired by N. Ciardiello, as defendants in this action. As stated in an opinion entered in open court on September 30, 1992, plaintiff's motion to file the second amended complaint is granted.

### CONCLUSION

While plaintiff may have an action in tort against defendant 3M (a question not addressed in the present motion), this Court finds that plaintiff has no right of action against defendant RPS. Accordingly, defendant RPS' motion for summary judgment is granted and all claims against that defendant are dismissed with prejudice. Plaintiff's motion for permission to file a second amended complaint is granted and said complaint shall be filed within 15 days.