STATE FARM FIRE AND CASUALTY
COMPANY, Plaintiff,

v.

UNITED VAN LINES, INC.,
et al., Defendants.

No. C 92–2807 SC.

United States District Court,
N.D. California.

Feb. 22, 1993.

John M. Thomas, Redwood City, CA, for plaintiff.

Gordon D. McAuley and Kevin R. Kennedy, Reisinger, Rogers & McAuley, San Rafael, CA, for defendants.

## FURTHER ORDER RE MOTION FOR SUMMARY JUDGMENT

CONTI, District Judge.

### I. INTRODUCTION

Defendants United Van Lines, Turlock Van and Storage, LDM Moving Services, and Jerry John Van Lengen (collectively "United") move for summary judgment on the ground that plaintiff State Farm Fire and Casualty's ("State Farm") Carmack Amendment [1] claims are barred by failure to file a timely written notice of claim.

### II. APPLICABLE STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper only when there is no genuine issue of material fact and, when viewing the evidence in the light most favorable to the non-moving party,[2] the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985). Once a summary judgment motion is made and properly supported, the adverse party may not rest on the mere allegations of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Myrtle Nell Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In addi-

1. 49 U.S.C. 20(11) of the Interstate Commerce Act.

2. *Bryant v. U.S. Treasury Dept., Secret Service,* 903 F.2d 717, 720 (9th Cir.1990).

tion, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987).

Bearing in mind that the evidence should be viewed in the light most favorable to State Farm, as the non-moving party, the relevant facts are summarized below.

## III. FACTS

Plaintiff's action is in subrogation, assigned to them by its insureds, David and Marcia Depatie (the "Depaties"). The Depaties shipped their household goods from Little River, California to Bend, Oregon in June of 1989, in a moving van operated by defendants and driven by Mr. Van Lengen. En route, a fire in the trailer destroyed and/or damaged a considerable portion of the Depaties' property. After the fire, the goods were returned to Turlock Van and Storage, and the undamaged portion of the shipment was subsequently delivered to the Depaties in Bend, Oregon. The Depaties filed a claim under their homeowners' policy, pursuant to which State Farm paid them approximately $109,000. Neither State Farm nor the Depaties filed any claim with United within nine months of the incident.

The focus of the current dispute is the bill of lading under which the goods were shipped. That bill of lading contains a number of terms and conditions printed on the reverse, which terms are reproduced from the applicable tariffs on file with the Interstate Commerce Commission ("ICC").[3] The essential term in this case is as follows:

> *SECTION 6.* As a condition precedent to recovery, a claim for any loss or damage, injury or delay, must be filed in writing with carrier within nine (9) months after delivery to consignee as shown on face thereof, or in case of failure to make delivery, then within nine (9) months after a reasonable time for delivery has elapsed; and suit must be instituted against carrier within two (2) years and one (1) day from the date when notice in writing is given by carrier to the claimant that carrier has disallowed the claim or any part or parts thereof specified in the notice. Where a claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, carrier shall not be liable and such a claim will not be paid.

The face of the bill of lading contains as one of its terms the following language:

> 3. All terms written, and printed, stamped or typed on the front or back of this form, are agreed to by both parties.

Below this term are spaces for the signatures of both the shipper and the carrier. Those two spaces, however, are blank; for whatever reason, neither the Depaties nor the driver signed the bill of lading at the time the goods were loaded. Mr. Depatie's signature does appear, however, in the space acknowledging delivery of the undamaged goods. In addition, the Depaties had executed a similar bill of lading in connection with another shipment made via United Van Lines in May of the same year, and that bill of lading bears their signature expressly accepting the relevant terms of the tariff.

State Farm filed its complaint in state court, alleging causes of action for conversion, breach of contract, breach of bailment agreement, and negligence. United removed the action to this court, and now seeks summary adjudication.

By prior order, this court took this motion off calendar, in order to request further

---

**3.** Tariff 400F.

briefing by the parties on the following issues:

1) Were the terms of the tariff, and specifically the nine-month limitation period, part of the contract between the parties, and if so on what theory?

2) Are non-commercial shippers of domestic goods charged with knowledge of the terms of applicable tariffs, regardless of actual knowledge?

3) Did the incorporation by contract of the tariff terms in a prior (May 1989) bill of lading place the Depaties on notice of those terms for purposes of the June 1989 bill of lading at issue? And, if the Depaties were thus on notice, did that notice bind them to those terms?

In that previous order, the court also dismissed the Depaties' state law causes of action, and held in abeyance the Depaties' motion for leave to amend in order to state a Carmack Amendment claim.

The parties have submitted additional briefing as requested, and the court now turns to the motion to dismiss the implied Carmack Amendment claim.

## IV. DISCUSSION

### A. *Failure to File Timely Notice of Claim*

Had the bill of lading been signed in the proper place, this case would be straightforward. The bill of lading clearly identifies the applicable tariff on its face,[4] and reproduces the applicable terms, including the nine-month period for filing a written claim, on the reverse. It is also undisputed that the filed Tariff 400–F was approved by the ICC and in full force at the time of the shipment. The Depaties, however, did not sign the bill of lading in the space provided, nor did the carrier. Mr. Depaties undated signature and the July 18 signature of the driver appear at the bottom of the form, acknowledging delivery, and an unidentified June 13 signature appears on the "shipper or representative" line setting released value. As State Farm is the non-moving party, the court accepts as

true that the Depaties did not sign the bill of lading until July 18, when they acknowledged receipt of the undamaged goods.

As a result, the court must determine whether the nine-month limitation period applies when the shipper has not affirmatively manifested in writing an intent to be bound by that term of the tariff.

The caselaw on this issue is less than clear. It has long been established that, as a general rule, properly published tariffs are binding on both shipper and carrier. As the court in *Aero Trucking, Inc. v. Regal Tube Co.*, 594 F.2d 619 (7th Cir.1979) stated:

The obvious and long-recognized purpose underlying [the rate-setting provisions of the Motor Carrier Act] is to prevent tariff rate discrimination. In accordance with this policy and the stringent language of the Act it has long been held that properly published tariffs are incorporated into any agreement between the shipper and carrier. As stated by the Supreme Court, "[the shipper], as well as the carrier, must be presumed to know the law, and to have understood that the rate charged could lawfully be the only one fixed by the tariff."

*Id.* at 621 (citations omitted). Similarly, the United States Supreme Court has recently reaffirmed that:

The legal rights of a shipper as against a carrier in respect to a rate are measured by the published tariff. Unless and until suspended or set aside, this rate is made, for all purposes, the legal rate, as between carrier and shipper. The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier.... This stringent rule prevails, because otherwise the paramount purpose of Congress—prevention of unjust discrimination—might be defeated.

*Maislin Industries v. Primary Steel*, 497 U.S. 116, 126, 110 S.Ct. 2759, 2765–66, 111 L.Ed.2d 94, 108 (1990) (quoting *Keogh v. Chicago & Northwestern R. Co.*, 260 U.S.

---

4. The Depaties maintain in their briefing that "[n]owhere in the 'Bill of Lading and Freight Bill' is the specific tariff identified that defendants seek to charge shipper with knowledge." This statement, however, is not true: "400F" is clearly typed in the box labeled "Tariff."

156, 163, 43 S.Ct. 47, 49–50, 67 L.Ed. 183 (1922)). The Court went on to explain that:

> Shippers and travelers are charged with notice of [the published rate], and they as well as the carrier must abide by it.... Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

*Id.*, 497 U.S. at 127, 110 S.Ct. at 2766, 111 L.Ed.2d at 109 (quoting *Louisville and Nashville R. Co. v. Maxwell*, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915)). *See also, Farley Terminal Co., Inc. v. Atchison, T. & S.F. Ry. Co.*, 522 F.2d 1095 (1975) and cases cited therein.

This "hard and fast" rule, however, arose in the context of rates set by tariff, and is driven by a concern that otherwise shippers would be free to discriminate in favor of certain shippers by intentionally "misquoting" and undercharging the tariff rates. When courts have considered tariff provisions that govern matters other than rates charged, the results have been less predictable, and some courts have softened the rule that shippers are conclusively presumed to know those provisions. Both parties have cited numerous cases, none of which are dispositive of the instant question. In reviewing those cases, however, the admittedly hazy contour of the law governing the issues of this case begins to emerge.

The question of whether the signature of the shipper is essential in order to be bound by liability limitations has been addressed by some courts. In *American Railway Express Company v. Lindenburg*, 260 U.S. 584, 43 S.Ct. 206, 67 L.Ed. 414 (1922), the Supreme Court vacated an award of damages in excess of stated liability limits, despite there being no written agreement regarding that limitation:

> the form of receipt which the express companies were authorized to adopt contains a recital to the effect that as evidence of the shipper's agreement to the printed conditions he "accepts and signs this receipt," and a blank space is provided for his signature. Naturally, such a signature would be desirable as constituting the most satisfactory evidence of the shipper's agreement, but it is not made a prerequisite without which no agreement will result.... It is sufficient if the shipper accepts the carrier's bill of lading without himself signing it.... In the absence of a statutory requirement, signing by the respondent was not essential.

*Id.* at 591, 43 S.Ct. at 209 (citations and quotations omitted). *American Railway*, however, concerned rate provisions which were required by law to be part of the tariff.

Recently, in *Joseph Harrah v. Minnesota Mining and Manufacturing Co.*, 809 F.Supp. 313 (D.N.J.1992), at least one district court has extended this rule to a time-of-filing provision. That court found that a consignee that neither was a party to the shipping agreement nor had ever received a copy of the bill of lading was nonetheless time-barred by provision identical to the one at issue here. In so holding, the court stated that:

> because plaintiff is a consignee, he is legally bound by the provisions of the tariff, since the tariff constitutes the contract between the parties to a transaction under the Interstate Commerce Act.
>
> Plaintiff asserts that he should not be bound by the provisions of the tariff because he was not a party to the contract between [shipper] and [carrier] and therefore was not aware of the tariff's provisions. However, "consignors, carriers, and consignees are all presumed to know the existence, effect and applicability of tariff provisions." [citation] Plaintiff, as the consignee, is bound by the tariff in effect for the transaction between [shipper] and [carrier].

*Id.*, 809 F.Supp. at 317 (citations omitted). *See also, Ryder Truck Lines, Inc. v. Consolidated Rail Corp.*, 580 F.Supp. 22 (1984) (nine month provision bars indemnity action by carrier against railroad, where tariff is iden-

tified in bill of lading but provisions are not recited therein).[5]

Similarly, in *White v. United Van Lines, Inc.*, 758 F.Supp. 1240 (N.D.Ill.1991), the applicability of an identical nine-month limitation period was at issue. In that case, as in this, the shipper had signed the bill of lading not at the time of shipment, but upon receipt. The court held that:

> White argues that she cannot be bound by the limitations provision because she had no actual knowledge of the provision when the contract was formed. However, it is well established that a shipper is chargeable with knowledge of a carrier's tariff provisions that are properly filed with the [ICC]. As our court of appeals has observed, "In accordance with … the stringent language of the [Motor Carrier Act] it has long been held that properly published tariffs are incorporated into any agreement between the shipper and carrier … '[The shipper], as well as the carrier, must be presumed to know the law….'" [citing *Aero*].

*Id.* at 1242. Significantly, this case is on all fours with the instant case in several important regards: The provision at issue is the same nine-month limitation provision, the shipper is in both cases an unsophisticated shipper of household goods,[6] and the bill of lading in both cases was signed not at the time of shipment but upon receipt of the goods.

State Farm, on its part, directs the court's attention to a number of cases that have relaxed the strict rule articulated above. For example, the court in *Fine Foliage of Florida, Inc. v. Bowman Transp.*, 901 F.2d 1034 (11th Cir.1990), found the distinction between mandatory tariff provisions (such as rates) and non-mandatory provisions (such as

the clause at issue here) to be relevant. In that case, the court considered a protective service provision by which the shipper accepted cargo requiring refrigeration only at the shipper's risk. That provision of the tariff, however, was not incorporated into the bill of lading. The court, while expressing doubts as to whether a non-mandatory tariff that was not incorporated into the bill of lading could bind a shipper absent actual notice, did not decide the issue. Rather, the court found that the provision in question was void in any case, as it was in conflict with the Carmack Amendment.

*Jones v. Yellow Freight System, Inc.*, 656 F.Supp. 550 (N.D.Ga.1987), similarly held that an unsophisticated shipper could not be held to a tariff provision which provided that the shipper was prohibited from accepting shipment of articles of antiquity or of extraordinary value unless those articles are released to a value of not more than five dollars per pound, absent actual knowledge. The court found that such a limitation was in conflict with the Carmack Amendment. *Jones*, however, also held that the shipper was otherwise bound by the provisions of the tariff incorporated into the bill of lading, whether or not the shipper had signed that bill of lading.

State Farm also relies on *Anton v. Greyhound Van Lines*, 591 F.2d 103 (1978) for the proposition that a limitation of liability, in order to be effective, must have been agreed to by the shipper. That case states that the agreement need not be manifested by signature, but must be knowing and express. *Anton*, however, concerned a limitation of liability based upon election of a lower shipping rate dependent on a declaration of released value, which the Carmack Amendment *requires* to have been in writing.[7] By contrast, the provisions of the Carmack Amendment

---

5. The Depaties cite *Ryder* for the proposition that "a provision purporting to exempt a carrier from liability if a claim is not filed can only be enforced if it is in an agreed upon written contract." The court is at a loss to find anything remotely resembling this proposition in *Ryder*.

6. If anything, the tendency to allow greater leniency to unsophisticated shippers was greater in *White;* the decision there left the individual uncompensated. Here, in contrast, the Depaties have been made whole, and it is their presum-

ably more sophisticated insurer that has failed to file a timely claim.

7. Liability for damages can be limited when property is "received for transportation concerning which the shipper shall have been or shall be expressly authorized or required by order of the [ICC] to establish and maintain rates dependent upon the value declared *in writing* as the released value of the property…."

allowing a time-of-notice provision do not contain such a writing requirement.[8]

■ State Farm argues, correctly, that the Carmack Amendment does not itself establish a nine-month period for filing. Instead, it states that carriers may not provide for a period of less than nine months. The relevant portion of the Amendment reads as follows:

A carrier may not provide by rule, contract, or otherwise, a period of less than nine months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section.

This section is not a statute of limitations, but rather a statutory determination of what is a reasonable period of limitations for a carrier to impose. *Louisiana & Western R.R. Co. v. Gardiner*, 273 U.S. 280, 284, 47 S.Ct. 386, 388, 71 L.Ed. 644 (1927). It is significant, however, that this section reads "by *rule*, contract, or otherwise...." By implication, the limitation period, so long as it is at least nine months, can be established *either* by rule or by contract. As such, a limitation by tariff is clearly contemplated, whether or not assented to by separate contract.

■ This reading comports with the holding in *Glazer Steel Corp. v. Strickland Transp. Co.*, 261 So.2d 117 (La.App.1972), upon which State Farm places great weight. That case held that:

The filing of a written notice of claim within nine months is not a statutory requirement; it is instead a contractual requirement. The [Carmack Amendment] merely provides that a receiving or delivering common carrier cannot rule, contract, regulate, or otherwise shorten the period for filing claims to less than nine months. Thus the existence of the requirement to give notice of claim within nine months is by contractual right and must so appear in a contract *or bill of lading.* The record contains no such agreement.

*Id.* at 118 (emphasis added). In that case, there was no evidence of a bill of lading

containing the tariff terms, or even referencing the applicable tariff. In contrast, the bill of lading in this case both referenced the relevant tariff on its face and reproduced the relevant sections on the reverse.

In light of the above, it is evident both that the limitation period may be established absent any contract, provided that it is incorporated in a lawful tariff, and that incorporation of that lawful tariff in a bill of lading will serve to bind the shipper contractually as well, even in the absence of a signature, at least where the shipper is provided a copy of that bill of lading or otherwise put on notice of its terms. While the caselaw is unclear on the exact parameters of the required notice, in this case the notice is adequate. The Depaties signed a copy of the bill of lading in question on receipt of their undamaged goods, and in addition had only one month earlier expressly incorporated the same terms into a previous contract with the same shipper.

As a result, the court finds that State Farm and the Depaties are bound by the nine-month limitation period for the filing of a written claim, notwithstanding the absence of a signature in the space provided on the bill of lading. As written notice was not given within nine months, summary judgment in favor of United is granted.

### B. *Leave to Amend*

State Farm requests leave to amend its claim to state a cause of action under the Carmack Amendment. As the court has found that any Carmack Amendment claim is barred by failure to file a timely written claim, such amendment is futile, and the motion is denied.

### V. CONCLUSION

In accordance with the foregoing, it is hereby ORDERED that:

1. United's motion for summary judgment on the sole remaining cause of action be, and hereby is, GRANTED;

---

8. United maintains that the time-of-notice provision is not a limitation of liability in the sense

used in *Anton,* but instead a procedural prerequisite to recovery.

2. State Farm's motion for leave to amend be, and hereby is, DENIED.

IT IS SO ORDERED.