102 F.3d 438
 96 Cal. Daily Op. Serv. 9041, 96 Daily Journal
D.A.R. 14,994
COMSOURCE INDEPENDENT FOODSERVICE COMPANIES, INC., a Georgia
corporation, Plaintiff-Appellee,
v.
UNION PACIFIC RAILROAD COMPANY, a Utah corporation,
Defendant-Appellant.
 No. 95-15826.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 15, 1996.
Decided Dec. 16, 1996.
 
 Scott R. Baugh, Union Pacific Law Department, Los Angeles, CA, and Barry N. Gutterman, Barry N. Gutterman & Associates, New York City, for appellant.
 Andrew J. Skaff, Karen L. Peterson, Knox Ricksen, Oakland, CA, and William J. Augello, Augello, Pezold & Hirschmann, Huntington, NY, for appellee.
 Appeal from the United States District Court for the Northern District of California; D.C. No. CV-92-04914-CAL. Charles A. Legge, District Judge, Presiding.
 Before: WIGGINS and TROTT, Circuit Judges, and VANCE,* District Judge.
 WIGGINS, Circuit Judge:
 
 
 1
 Union Pacific Railroad Company (UP), carrier for Comsource Independent Food Service Companies, Inc. (Comsource), appeals the district court's denial of its motion for summary judgment. UP claims that the one year statute of limitations contained in a document titled UP EXEMPT 1-F (the "Tariff") bars this suit brought by Comsource approximately fourteen months after UP rejected Comsource's claim that a shipment of frozen vegetables were damaged while in UP's possession. We AFFIRM.
 
 I.
 
 2
 Comsource is a member-owned cooperative, comprised of independently owned and operated food service and non-food distributors. Comsource frequently used UP for its shipment of food products. As part of their ongoing business relationship, on September 25, 1990, UP had sent Comsource a copy of the Tariff, which is on file with the Interstate Commerce Commission.[1] According to Item 7, Section 3(b) of the Tariff, the statute of limitations within which a shipper may file suit against the carrier is one year from the day the carrier gives notice in writing to the shipper of its denial of shipper's loss and damage claim.[2] Item 8 of the Tariff provides that a shipper may select terms set forth in 49 U.S.C. § 11707 (the "Carmack Amendment"), including the two year statute of limitations, for an additional charge. The amount of this additional charge is not specified in the Tariff and a shipper must call a toll free phone number to find out the amount.[3] UP also provided Comsource with a document entitled "UP-EBFF-3" (the "rate sheet") in January, 1991. The rate sheet incorporates the terms provided in the Tariff.[4]
 
 
 3
 On July 12, 1991, Comsource shipped a railcar of frozen vegetables from the warehouse of Christian Salvesen, Inc. ("Salvesen") in Modesto, California, to a warehouse facility in Independence, Missouri. To commence this shipment, Salvesen, acting as Comsource's agent,[5] first called Modesto and Empire Traction Company ("M & ET"), the short-line service provider, and asked them to send over a railcar. Salvesen loaded the railcar and faxed a bill of lading to M & ET.[6] On the bill of lading, Salvesen had typed the words "Letter Quote UP-EBFF-3 $3000.00[,]" which referred to the rate quoted on the rate sheet for shipments from California to the Kansas City area. A "Straight Bill of Lading" was also prepared by Salvesen for the same shipment.[7] The Straight Bill of Lading contains a detailed list of the shipment's content. The reason for having two types of bill of lading is not mentioned in the record. After examining the faxed bill of lading, M & ET shipped the railcar from Modesto to Stockton, where UP, the interstate carrier, took over the railcar and delivered it to its destination in Missouri. When the shipment arrived in Missouri, the vegetables were in damaged condition indicating that they had thawed and refrozen.
 
 
 4
 On September 3, 1991, Comsource filed a claim with UP regarding the damaged shipment but UP denied this claim in a letter dated October 30, 1991.[8] On December 18, 1992, fourteen months after the denial letter, Comsource filed suit against UP and Salvesen for damage to the shipment. On May 18, 1993, M & ET was added as a defendant. After judicial arbitration in October, 1993, in which Comsource was awarded $25,928, UP requested a trial. Prior to trial, UP and M & ET (collectively "UP" hereafter) filed a Motion for Summary Judgment. The motion was based on Comsource's filing suit fourteen months after the original denial of Comsource's loss and damage claim. UP claimed that the one year statute of limitations period provided for in the Tariff barred the suit. The district court denied the motion in an order dated May 10, 1994. The court held that the Staggers Amendment to the Interstate Commerce Act required a carrier to first offer the two year statute of limitations period specified in the Carmack Amendment of the Interstate Commerce Act and then offer the shipper an opportunity to select other terms; here, however, UP offered non-Carmack terms first and then offered Carmack terms as an option. Jury trial commenced on January 31, 1995, but on the second day of trial, the district court declared a mistrial and the parties agreed to a stipulated judgment entered on March 23, 1995.[9] As part of the stipulated judgment, UP reserved its right to challenge and appeal the court's pre-trial ruling on UP's Motion for Summary Judgment. This appeal followed.
 
 II.
 
 5
 A denial of motion for summary judgment is generally not a final order, and is therefore not ordinarily appealable. Jones-Hamilton Co. v. Beazer Materials & Servs., Inc., 973 F.2d 688, 693-94 (9th Cir.1992). However, a denial of a summary judgment order is appealable after the entry of a final judgment. Moran v. Aetna Life Ins. Co., 872 F.2d 296, 301 (9th Cir.1989). The denial of summary judgment in this case is reviewable. See Smigiel v. Aetna Casualty and Surety Co., 785 F.2d 922 (11th Cir.1986) (reviewing denial of summary judgment where parties entered a stipulated judgment before trial in which the defendant reserved the right to appeal the denial of summary judgment).
 
 
 6
 In reviewing summary judgment, we "must determine whether the evidence, viewed in a light most favorable to the nonmoving party, presents any genuine issues of material fact and whether the district court correctly applied the law." Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996); see also Pomerantz v. County of Los Angeles, 674 F.2d 1288, 1290 (9th Cir.1982) (same standard applies for review of denial of summary judgment). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
 
 III.
 
 7
 UP contends that the district court erred in interpreting the Staggers Amendment to require a carrier first to offer terms consistent with the Carmack Amendment and then to offer non-Carmack terms as an option. The district court held that UP first offered the one year non-Carmack statute of limitations and then gave Comsource the option to choose the Carmack term (two year limitations period) through provisions in the Tariff. Thus the court refused to apply the one year limitations period and denied UP's motion for summary judgment.
 
 
 8
 Before we consider the interpretation of the Staggers Amendment, however, we must first determine whether UP did in fact offer the one year statute of limitations to Comsource. Here, Section 3(b) of the Tariff is the only provision among the documents exchanged between UP and Comsource which provides for a one year statute of limitations, and so the provisions in the Tariff must govern the shipment in question for the one year statute of limitations to apply. Although tariff provisions required by law to be in the tariff ("mandatory" provisions) give constructive notice to the shipper, tariff provisions not required by law to be in the tariff ("non-mandatory" provisions), such as statute of limitations provisions, do not have this effect. The issue of what conditions need to be met for a statute of limitations provision in the tariff to bind the shipper is one of first impression. We hold that the shipper must have reasonable notice of a statute of limitations tariff provision because it is a non-mandatory provision. UP failed to set forth undisputed material facts that demonstrate that Comsource had reasonable notice of the two year statute of limitations.
 
 
 9
 Under the Interstate Commerce Act, a carrier subject to the jurisdiction of the Interstate Commerce Commission (ICC) must file with the Commission tariffs containing rates and other information related to those rates. 49 U.S.C. § 10762(a)(1) (1994).[10] The Carmack Amendment states, inter alia, that a carrier may not provide for a period of less than two years for bringing a civil action in the tariff or by contract. 49 U.S.C. § 11707(e) (1994).[11] However, the Staggers Amendment allows rail carriers to offer "alternative terms" and thus frees rail carriers from the strict application of the Carmack Amendment. 49 U.S.C. § 10505(e) (1994).[12]
 
 
 10
 Historically, a tariff on file with the ICC was construed to have the effect of a statute and give the shipper constructive notice of its terms. See, e.g., Western Transit Co. v. A.C. Leslie & Co., 242 U.S. 448, 37 S.Ct. 133, 61 L.Ed. 423 (1917). This prompted carriers to bury various limitations of liability provisions and other burdensome non-mandatory provisions in the tariff and to incorporate those provisions into the bill of lading by referring to the entire tariff, knowing that shippers rarely scrutinize all the terms in the tariff. Swift Textiles, Inc. v. Watkins Motor Lines, Inc., 799 F.2d 697, 701 (11th Cir.1986), cert. denied, 480 U.S. 935, 107 S.Ct. 1577, 94 L.Ed.2d 768 (1987). Courts have since stepped in to limit the effect of such tariff provisions in certain circumstances.
 
 
 11
 Accordingly, we have held that the "filing of tariff gives constructive notice of only those terms that are required by law to be filed." Komatsu, Ltd. v. States S.S. Co., 674 F.2d 806, 811 n. 7 (9th Cir.1982) (citing Port of Tacoma v. S.S. Duval, 364 F.2d 615, 617 (9th Cir.1966)). However, we have not yet decided on the necessary conditions for a non-mandatory provision, such as a statute of limitations provision, to bind the shipper.[13]
 
 
 12
 The Northern District of California has dealt with the binding effect of tariff provisions regarding statute of limitations incorporated in the bill of lading. In State Farm Fire & Casualty v. United Van Lines, 825 F.Supp. 896 (N.D.Cal.1993), the court held that when a provision regarding the statute of limitations period is in the tariff, "incorporation of that lawful tariff in a bill of lading will serve to bind the shipper ... where the shipper is provided a copy of that bill of lading [which explicitly reproduces the relevant provision] or otherwise put on notice of its terms." Id. at 901 (emphasis added).
 
 
 13
 The Eleventh Circuit also has made the distinction between mandatory and non-mandatory provisions. It held that mandatory provisions have the force of law while non-mandatory provisions do not bind the shipper if they conflict with typical provisions associated with the governing federal statutes and the shipper had no actual notice of the non-mandatory provisions. Fine Foliage of Florida, Inc. v. Bowman Transp., Inc., 901 F.2d 1034, 1041-43 (11th Cir.1990); Swift, 799 F.2d at 703. As stated by the Second Circuit, a non-mandatory tariff provision should not bind the shipper when it conflicts with federal statutes, because "[i]n accepting the short form [bill of lading], the shipper relies upon the fact that the long form, which is incorporated by reference, contains only the usual provisions which closely follow [the governing federal statute], unless there is some warning on the face of the short form of special terms or exceptions which differ from the [statute] provisions." Encyclopaedia Britannica, Inc. v. S.S. Hong Kong Producer, 422 F.2d 7, 14 (2d Cir.1969), cert. denied, 397 U.S. 964, 90 S.Ct. 998, 25 L.Ed.2d 255 (1970).[14] In other words, shippers are entitled to additional notice for tariff provisions differing from federal statutes because the existence of the statute itself will not provide any constructive notice for such provisions.
 
 
 14
 Although we have not dealt with this precise issue, Hughes Aircraft Co. v. North Am. Van Lines, Inc., 970 F.2d 609 (9th Cir.1992), is instructive. In Hughes, we discussed a tariff provision limiting the carriers liability for property damage.[15] We held that "[t]he filing of a tariff alone does not limit the carrier's liability"--the shipper must also be given "reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a deliberate and well-informed choice." Id. at 612 (second emphasis added). Thus, without "reasonable notice," the liability limitation provision in the tariff could not bind the shipper. We conclude that the same reasonable notice test is appropriately applied to non-mandatory provisions regarding statute of limitations.
 
 
 15
 The statute of limitations Tariff provision in the present case does not give the shipper constructive notice, because statute of limitations provisions are non-mandatory and the Tariff's one year statute of limitations provision conflicts with a federal statute-namely, the Carmack Amendment of the Interstate Commerce Act which requires a two year limitations period. Therefore, Comsource must have had reasonable notice that a one year statute of limitations would apply to the shipment in question for the Tariff provision to bind Comsource.
 
 
 16
 As the court in State Farm noted, "the caselaw is unclear on the exact parameters of the required notice." State Farm, 825 F.Supp. at 901. However, the holdings in related cases offer specific guidelines. Courts have considered the following factors: whether the provision in the tariff was "specifically brought to the shipper's attention," Encyclopaedia Britannica, 422 F.2d at 14; the shipper's "sophistication, abundant experience, or extensive prior dealings with a carrier[,]" Carmana Designs v. North Am. Van Lines, 943 F.2d 316, 321 (3d. Cir.1991); whether the shipper "drafted the contract and directly negotiated its terms[,]" Hughes Aircraft, 970 F.2d at 612; and whether the tariff provision was specifically reproduced in the bill of lading, State Farm, 825 F.Supp. at 901.
 
 
 17
 The situation in the present case is mixed: UP did not specifically bring the Tariff provision to the attention of Comsource; Comsource did not draft the bill of lading or negotiate its terms; as far as the record shows, the Tariff provision was not specifically reproduced in the bill of lading. However, it is unclear whether UP brought the Tariff provision to the attention of Salvesen, Comsource's agent; Comsource is a sophisticated shipper with extensive prior dealings with UP; and the agent Salvesen did prepare the bill of lading, which refers to the rate sheet, which, in turn, refers to the Tariff.
 
 
 18
 Given the above, we determine that a reasonable jury could find in favor of Comsource. Therefore, the district court's denial of summary judgment was proper, and we need not reach the issue of interpreting the Staggers Amendment.
 
 IV.
 
 19
 For the foregoing reasons, we AFFIRM.
 
 
 
 *
 Hon. Sarah S. Vance, United States District Judge for the Eastern District of Louisiana, sitting by designation
 
 
 [1]
 Comsource claims that UP sent the Tariff to Comsource "to no one's attention."
 
 
 [2]
 Section 3(b) of the Tariff reads:
 Suit for loss, damage, delay or injury to property described in this exempt bill of lading may only be instituted against Union Pacific System or delivering carrier within one year from the day when notice in writing is given by Union Pacific System or delivering carrier that same or any part thereof specified in the notice of claim has been disallowed. Where claims are not filed and suits not instituted thereon according to the foregoing provisions, none of the carriers shall be liable and such claims shall not be paid.
 
 
 [3]
 Item 8 of the Tariff reads:
 Shipper may, at his option, elect that the shipment move under the liability provisions set forth in 49 U.S.C. Section 11707 [the Carmack Amendment]. In the event of such an election, the shipper shall place the following notation on the bill of lading: "This shipment subject to liability provisions set forth in 49 U.S.C. Section 11707." An additional charge is assessed on shipments for which the shipper elects "Section 11707 liability." Information including the charges for "Section 11707 liability" can be obtained by calling our toll free phone numbers. Where the shipper elects the liability provisions set forth in 49 U.S.C. Section 11707, the period for bringing suit against any carrier will also be affected in the following manner: Any suit must be commenced within two years (rather than one year as provided elsewhere in this circular) from the date the carrier gives written notice that it has disallowed the claim or any part of the claim specified in the notice.
 Tariff at 14.
 
 
 [4]
 The first paragraph in the rate sheet provides: "Shipments made under these rates are subject to all rules and provisions contained in UP Exempt 1-Series Circular...."
 
 
 [5]
 In its Opposition to Motion for Summary Judgment, Comsource initially denied that Salvesen was acting as its agent but it provided no supporting evidence. In response, UP presented the bill of lading, which specified an employee of Salvesen as Comsource's "agent," as evidence that Salvesen was acting as Comsource's agent. In this appeal, Comsource does not deny that Salvesen was its agent and we treat Salvesen as such
 
 
 [6]
 M & ET had previously provided Salvesen with the form for the bill of lading. A provision in it states that "every service to be performed hereunder shall be subject to all the conditions not prohibited by law, whether printed or written, herein contained, including the conditions on back hereof, which are hereby agreed to by the shipper and his assigns." It is unfortunate that we were not provided with a photocopy of the back side of this document-especially in light of Salvesen's statement, in its Opposition to Union Pacific's Motion for Summary Judgment, that section 2(b) in "[t]he bill of lading which controlled the relationship of the parties in this action contained a two-year limitation period."
 
 
 [7]
 The form for the straight bill of lading was Salvesen's own. A provision in it reads, in pertinent part, as follows:
 [E]very service to be performed hereunder shall be subject to all the terms and conditions of the Uniform Domestic Straight Bill of Lading set forth (1) in Uniform Freight Classification in effect on the date hereof, if this is a rail of a rail-water shipment.... Shipper hereby certifies that he is familiar with all the terms and conditions of the said bill of lading, set forth in the classification ... which governs the transportation of this shipment, and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.
 Note that this does not necessarily incorporate the Tariff. The Uniform Domestic Straight Bill of Lading mentioned here contains a provision setting the statute of limitations at two years.
 
 
 [8]
 In this letter, UP states that temperature records of the railcar indicated that there was no mishandling. These temperature records indicate temperatures between k5 and -10 degrees Celsius when measured on July 13, 15, 16, 22 and 23 of 1991
 
 
 [9]
 The parties stipulated to Comsource's recovering $18,000 from Salvesen and $18,000 from UP, with each party bearing its own costs and attorney fees
 
 
 [10]
 The text of 49 U.S.C. § 10762(a)(1), in relevant part, reads as follows:
 A carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title (except a motor common carrier) shall publish and file with the Commission tariffs containing the rates and (A) if a common carrier, classifications, rules, and practices related to those rates, and (B) if a contract carrier, rules and practices related to those rates, established under this chapter for transportation or service it may provide under this subtitle.
 49 U.S.C. § 10762(a)(1) (1994).
 
 
 [11]
 The Carmack Amendment, in relevant part, reads as follows:
 A carrier or freight forwarder may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date the carrier or freight forwarder gives a person written notice that the carrier or freight forwarder has disallowed any part of the claim specified in the notice.
 49 U.S.C. § 11707(e) (1994).
 
 
 [12]
 Section 10505(e) provides as follows:
 No exemption order issued pursuant to this section shall operate to relieve any rail carrier from an obligation to provide contractual terms for liability and claims which are consistent with the provisions of section 11707 of this title. Nothing in this subsection or section 11707 of this title shall prevent rail carriers from offering alternative terms nor give the Commission the authority to require any specific level of rates or services based upon the provisions of section 11707 of this title.
 49 U.S.C. § 10505(e) (1994) (emphasis added).
 
 
 [13]
 A statute of limitations provision is a non-mandatory provision. See 49 U.S.C. 10762(a) (1994); Allstate Insurance Co. v. International Shipping Corp., 703 F.2d 497, 500 (11th Cir.1983) (holding that statute of limitations provisions in the tariff "were not related to rates or charges and therefore were not required by law to be within the tariff")
 
 
 [14]
 Encyclopaedia Britannica involved the Carriage of Goods by Sea Act and not the Interstate Commerce Act but the facts are similar to the present case-the short form bill of lading incorporated the tariff on file with a federal commission. Encyclopaedia Britannica held that unusual provisions in the tariff which are "never specifically brought to the shipper's attention, and of which the shipper had no actual knowledge" will not have effect on the shipper. Id
 
 
 [15]
 Under the Carmack Amendment, a carrier has liability for the full amount of property damage. 49 U.S.C. § 10707(a) (1994) ("The liability imposed under this paragraph is for the actual loss or injury to the property caused by [the carrier]...."). A carrier may, however, limit its liability by agreement with the shipper. 49 U.S.C. § 10730(a) (1994) ("The Interstate Commerce Commission may require or authorize a carrier ... to establish rates for transportation of property under which the liability of the carrier for that property is limited to a value established by written declaration of the shipper, or by a written agreement....")