**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STARRAG; STARRAG-HECKERT INC.,
      *Plaintiffs-Appellants,*

v.

MAERSK, INC., a New York
Corporation; MAERSK PACIFIC LTD.,
a California Corporation,
      *Defendants-Appellees.*

No. 04-56771

D.C. No.
CV-01-11013-PA

OPINION

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted
October 16, 2006—Pasadena, California

Filed May 14, 2007

Before: John R. Gibson,* Raymond C. Fisher, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Callahan

---

*The Honorable John R. Gibson, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

**COUNSEL**

Iliaura Hands (argued), New Orleans, Louisiana, Timothy R. Lord, Bernadette M. Chala, Costa Mesa, California, for the appellants.

Theodore H. Adkinson (argued), and John D. Giffin, Long Beach, California, for the appellees.

## OPINION

CALLAHAN, Circuit Judge:

## INTRODUCTION

Starrag and Starrag-Heckert, Inc. (collectively "Starrag") appeal from the district court's order granting partial summary judgment and applying the $500 per package liability limitation under the Carriage of Goods by Sea Act ("COGSA") to three machines shipped with Maersk, Inc. that were damaged while being transported across a container yard operated by Maersk Pacific Ltd., a terminal operator. Starrag argues that the package limitation cannot apply to damage that occurred after Maersk unloaded the machines from their ship, and that application of the limitation conflicts with the COGSA and a related statute, the Harter Act.[1] In addition, Starrag claims that the term "delivery" in Maersk's Combined Transport Bill of Lading ("CTBL") is ambiguous, and therefore should be read to restrict the package limitation to damage occurring after the machines were loaded onto the ship and before the cargo was unloaded.

We affirm the district court, holding: (1) Maersk did not need to provide actual notice to Starrag that the CTBL contractually extended the terms of COGSA outside of the "tackle to tackle" period; (2) contractually extending the package limitation does not conflict with the COGSA or the Harter Act; and (3) the district court properly interpreted the term "delivery" in a manner consistent with both maritime law and the terms of the short form non-negotiable sea way-bill ("Short Form") and the CTBL.

## FACTUAL BACKGROUND[2]

---

[1] Congress recodified both COGSA and the Harter Act on October 6, 2006 at 46 U.S.C. § 30701 historical and statutory notes. Act of October 6, 2006, Pub. L. No. 109-304, 120 Stat. 1485.

[2] The parties stipulated to the following facts, repeated here verbatim, for the purposes of the cross-motions for summary judgment.

On or about August 31, 2000, Starrag and Maersk entered into a Contract of Affreightment that is embodied in a Non-Negotiable Seaway Bill.[3] By the terms of the seaway bill, a flat rack with three crates containing aerospace machinery were carried from Rotterdam to Long Beach, California aboard the M/V McKinney Maersk. Maersk Inc. was acting as the U.S. Agent for the owners of the M/V McKinney Maersk, and Maersk Pacific Ltd., which operated the terminal at which the cargo was removed from the M/V McKinney Maersk. The flat rack was unloaded from the M/V McKinney Maersk at Maersk Pacific Ltd.'s terminal at Pier J in the Port of Long Beach. The flat rack was moved from the dock to Maersk Pacific Ltd.'s container yard. While the flat rack was being parked in Row M, it tipped over to its side causing damage to the cargo contained within the three crates.

## PROCEDURAL HISTORY

The parties filed cross-motions for partial summary judgment on whether Maersk could enforce the package liability limit of $500 per package under the COGSA, capping defendants' liability at $1,500. The district court granted Maersk's motion for partial summary judgment, limiting Maersk's total liability to $1,500. The district court found that the CTBL incorporated the package damage liability limit of the COGSA into the Short Form as expressly authorized by the COGSA. The district court rejected Starrag's claim that Maersk was required to provide actual notice of the extension of COGSA to any damage after unloading of the cargo and before "delivery" of the goods. The district court also found that under the terms of the CTBL, there was no "delivery" of the machines. As a result, the district court found that under the terms of the Short Form and the CTBL, the package damage liability limit of $500 per package applied, and Maersk was not liable for more than $1,500 in damages. The parties

---

[3]The waybill is referred to in this opinion as the Short Form.

stipulated to liability and damages, and the district court entered a final judgment.

## STANDARD OF REVIEW

In an appeal from a summary judgment, the appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004). Appellate courts review a district court's analysis of contractual language and application of principles of contract interpretation de novo. *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 367 (9th Cir. 1985).

## DISCUSSION

### I.

**[1]** The COGSA limits damages against a carrier for loss or damage to goods in transit to $500, stating:

> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.
>
> By agreement between the carrier, master, or agent of the carrier, and the shipper another maximum

amount than that mentioned in this paragraph may be fixed: Provided, That such maximum shall not be less than the figure above named. In no event shall the carrier be liable for more than the amount of damage actually sustained. COGSA § 4(5).**⁴** Essentially, the package limitation presents the shipper with a choice to accept the liability limitation in exchange for a lower rate for shipping, or to declare a higher value and pay a higher rate. *See Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 19 (2004) ("[A]s is common in the industry, Kirby accepted a contractual liability limitation for ICC below the machinery's true value, resulting, presumably, in lower shipping rates.").**⁵**

**[2]** Ordinarily, the COGSA only applies "from the time when the goods are loaded on to the time when they are discharged from the ship." COGSA § 1(e); *see Mori Seiki USA, Inc. v. M.V. Alligator Triumph*, 990 F.2d 444, 447 (9th Cir. 1993) ("By its own terms, COGSA limits liability for cargo damage to $500, if the damage occurs between the time the cargo is loaded on to the ship and the time it is discharged from the ship ('tackle to tackle')."); *Pan Am. World Airways, Inc. v. California Stevedore & Ballast Co.*, 559 F.2d 1173, 1177 n. 5 (9th Cir. 1978) (noting COGSA applies "from the time the ship's tackle is hooked onto the cargo at the port of loading until the time when cargo is released from the tackle at the port of discharge"). Section 7 of the COGSA explicitly states, however, that:

---

**⁴***See* 46 U.S.C. § 30701, note (2006) (Carriage of Goods by Sea Act).

**⁵**Because the short form in this case is not "a bill of lading or any similar document of title," COGSA § 1(b), COGSA does not apply to it by its own force. *See* 1 Thomas J. Schoenbaum, *Admiralty & Maritime Law*, § 10-11 (4th ed. 2004). However, the Short Form on its face states that, "In the case of carriage to or from the United States of America, the provisions of the United States Carriage of Goods by Sea Act 1936 (COGSA) shall apply to the contract as if it were a Bill of Lading . . . ." This is sufficient to incorporate the rules embodied in COGSA. *See id.*

> Nothing contained in [COGSA] shall prevent a carrier or a shipper from entering into any agreement, stipulation, condition, reservation, or exemption as to the responsibility and liability of the carrier or the ship for the loss or damage to or in connection with the custody and care and handling of goods prior to the loading on and subsequent to the discharge from the ship on which the goods are carried by sea.

COGSA § 7. Therefore, the COGSA expressly permits parties to a maritime shipping contract to provide for liability limitations beyond the "tackle to tackle" period for damage that occurs prior to loading or after unloading of the goods from the ship.

**[3]** In this case, the Short Form begins by stating, "[t]he contract evidenced by this Waybill is subject to the exceptions, limitations, conditions and liberties (including those relating to pre-carriage and on-carriage) set out in Maersk Sealand's current Combined Transport Bill of Lading." The Short Form therefore incorporates by reference the CTBL's language in paragraph 5.2 (also known as a "period of responsibility clause," *see Sompo Japan Ins. Co. of Am. v. Union Pac. R.R. Co.*, 456 F.3d 54, 56 (2d Cir. 2006)), stating that Maersk's liability shall be determined according to the COGSA "[w]here loss or damage has occurred between the time of receipt of the Goods by the Carrier at the port of loading and the time of delivery by the Carrier at the port of discharge, or during any prior or subsequent period of carriage by water . . . ." As a matter of contract interpretation, this language extends COGSA's liability limitation beyond its statutory terms to activities before and after the "tackle to tackle" period, including up to "the time of delivery."

## II.

Starrag's main contention is that the failure of the Short Form (that was provided to Starrag) to explicitly state that the

CTBL (that was merely made available to Starrag) contractually extends the COGSA package limitation through delivery of the goods causes it to conflict with the COGSA and therefore the package limitation cannot be enforced.

## A.

**[4]** A short form bill of lading may incorporate by reference the terms in a long form bill of lading without providing specific notice of those terms so long as the incorporated provisions are not special terms or exceptions that differ from the governing federal statutes. *See Comsource Foodservice Indep. Foodservice Cos. v. Union Pac. R.R.*, 102 F.3d 438, 443-444 (9th Cir. 1997) (*citing Encyclopaedia Britannica, Inc. v. S.S. Hong Kong Producer*, 422 F.2d 7, 14 (2d Cir. 1969)). If a short form bill of lading fails to give notice of a term in a long form bill of lading that is inconsistent with a statute, a court may refuse to enforce the contract clause. *See Encyclopaedia Britannica*, 422 F.2d at 16 (refusing to enforce a clause that shifted the burden of proof from the carrier to the shipper); *see also Comsource*, 102 F.3d at 444 (holding under the Interstate Commerce Act that absent "reasonable notice" of a one year statute of limitations provision that conflicted with the Act, the provision did not bind the shipper). The reason for refusing to enforce inconsistent contractual terms is that by "accepting the short form, the shipper relies upon the fact that the long form, which is incorporated by reference, contains only the usual provisions which closely follow COGSA, unless there is some warning on the face of the short form of special terms or exceptions which differ from the COGSA provisions." *Encyclopaedia Brittanica*, 422 F.2d at 14. In other words, shippers are entitled to additional notice of "provisions differing from federal statutes because the existence of the statute itself will not provide any constructive notice for such provisions." *Comsource,* 102 F.3d at 443-444.

**[5]** *Comsource* and *Encyclopaedia Britannica* are distinguishable from this case because extending COGSA's liabil-

ity limit is entirely consistent with COGSA and other statutes. *See Sabah Shipyard Sdn. Bhd. v. M/V Harbel Tapper*, 178 F.3d 400, 406-409 (5th Cir. 1999) (holding that a period of responsibility clause is permitted by COGSA and does not conflict with the Harter Act). In *Comsource*, we noted that 49 U.S.C. § 11707 ("The Carmack Amendment"), part of the Interstate Commerce Act ("ICA"), prohibited carriers from providing for a statute of limitations shorter than the Act's two year default. *Comsource*, 102 F.3d at 442 & n.11 (quoting 49 U.S.C. § 10505(e)). Another provision of the ICA, 49 U.S.C. § 10505(e) ("The Staggars Amendment"), however, allowed rail carriers to offer alternative terms, thus "free[ing] rail carriers from the strict application of the Carmack Amendment." *Id.* at 442-43 (citing 49 U.S.C. § 10505(e)). In light of the tension between the two amendments, we held that the railroad could not enforce the one year statute of limitations contained in its tariff without providing reasonable notice of the term because it "conflicts with a federal statute — namely the Carmack Amendment of the Interstate Commerce Act which requires a two year limitations period." *Comsource*, 102 F.3d at 444.

In this case, the extension of COGSA's terms utilizes, rather than contradicts an express provision of the COGSA. Moreover, as the Supreme Court remarked in *Norfolk Southern*, a carrier's use of a period of responsibility clause may both benefit the shipper and further the purposes of COGSA:

> As COGSA permits, Hamburg Sud in its bill of lading chose to extend the [package limitation] to the entire period in which the machinery would be under its responsibility, including the period of inland transport. Hamburg Sud would not enjoy the efficiencies of the [package limitation] if the liability limitation it chose did not apply equally to all legs of the journey for which it undertook responsibility. And the apparent purpose of COGSA, to facilitate

efficient contracting in contracts for carriage by sea, would be defeated.

543 U.S. at 29.

**[6]** *Comsource* is also distinguishable because in that case, the bill of lading issued to the shipper contradicted the statute of limitations term in the carrier's tariff. *See Comsource*, 102 F.3d at 441 fn. 7. Although the carrier sought to enforce a one year statute of limitations in its tariff, the underlying bill of lading incorporated a Uniform Domestic Straight Bill of Lading that provided for a two year statute of limitations, not the tariff. *Id*. Thus, the tariff was inconsistent with the bill of lading as well as the applicable statute. Here, there is no conflict between the documents, and the Supreme Court has held that such an extension is consistent with the COGSA.

In the second case relied upon by Starrag, *Encyclopaedia Britannica*, the Second Circuit considered a clause in a long form bill of lading, not mentioned in the short form bill of lading, that required a shipper to notify the carrier if stowage of the goods below deck was required. 422 F.2d at 10. The clause also disclaimed any liability for damage to goods stored on deck. *Id*. at 10, 13-14. After characterizing this clause as a "substantial deviation from the standard provisions," the Second Circuit noted that the clause shifted "the burden of proof from the carrier, as provided by COGSA, to the shipper." *Id*. at 13, 16. The court concluded that the attempt to contractually shift the burden of proof regarding damages stated in COGSA violated the Act's prohibition on exculpatory clauses.[6] *Id*. at 16. *Encyclopaedia Britannica* is distinguishable because the contractual extension of the COGSA's package limitation does not violate any of the provisions of the COGSA, and is expressly allowed by § 7 of the Act. Therefore, no additional notice was required.

---

[6]Not only did the short form bill of lading fail to inform the shipper of this burden shifting, but the carrier did not even mention the clause in the long form bill of lading until it filed a post-trial motion. *Id*. at 17.

**[7]** As a practical matter, contractual extension of the COGSA is now routine in the shipping industry. *See* Michael E. Crowley*, The Limited Scope of the Cargo Liability Regime Covering Carriage of Goods by Sea: The Multimodal Problem*, 79 Tul. L. Rev. 1461, 1471 (2005); 8 *Benedict on Admiralty*, § 16.06 (7th rev. ed. 2004). The clause at issue in this case, paragraph 5.2 of the CTBL, is a period of responsibility clause that is recognized as a "term and condition normally found on the reverse side of a bill of lading." 1 Schoenbaum, *Admiralty and Maritime Law*, § 10-11 at 64-65. Unlike the burden shifting terms of the bill of lading in *Encyclopaedia Britannica*, or the shorter statute of limitations in *Comsource*, the existence of COGSA § 7, and industry practice makes contractual extension of the COGSA package limitation one of "the usual provisions which closely follow COGSA" and not a special term or exception that differs from the COGSA provisions. *Encyclopaedia Britannica*, 422 F.2d at 14. We conclude that Maersk's Short Form and CTBL are in harmony with the relevant provisions of the COGSA, that the district court properly distinguished *Comsource* and *Encyclopaedia Britannica*, and that Maersk was not required to give additional notice to enforce the package liability limitation or to contractually extend the terms of the COGSA.

## III.

**[8]** Starrag also argues that the package limitation violates the Harter Act's prohibition of clauses exculpating carriers from liability.[7] This argument fails for two reasons. First,

---

[7]The Harter Act's prohibition on exculpation formerly stated:

> It shall not be lawful for the manager, agent, master, or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause, covenant, or agreement whereby it, he, or they shall be relieved from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery of any and all

where the parties contractually extend the COGSA to cover the damage, the Harter Act does not apply. *See Sea-Land Serv., Inc. v. Lozen Int'l, LLC*, 285 F.3d 808, 816-17 (9th Cir. 2002) (applying the COGSA to a bill of lading that contractually extended COGSA through a Clause Paramount and not the Carmack Amendment or the Harter Act). Therefore, because the CTBL properly states that it is governed by the COGSA, and extends the COGSA terms through delivery of the goods, the Harter Act does not apply.

[9] Second, even if the Harter Act applied, it does not prohibit clauses that limit liability. Starrag contends that the COGSA's package limitation violates the Harter Act's prohibition of exculpation of liability by limiting its recovery to $1,500 where its machines suffered approximately $600,000 in damage. The difference between the liability cap and the actual damages, however, is irrelevant. We have recognized that as long as the carrier does not *avoid* liability under the Harter Act, it can *limit* liability through the use of contract clauses. *See Vision Air Flight Serv.*, 155 F.3d at 1171 n. 7 (*citing* 2A Benedict on Admiralty, § 12 at 2-5 (1988)). In *Tessler Bros.,* we concluded that as long as there is some liability, a package limitation is not an exculpation from liability under either the COGSA or the Harter Act. 494 F.2d at 443 (discussing difference between a liability limit and a liability

---

lawful merchandise or property committed to its or their charge. Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect.

46 U.S.C. app. § 190 (2000). The current version of the Harter Act similarly provides:

A carrier may not insert in a bill of lading or shipping document a provision avoiding its liability for loss or damage arising from negligence or fault in loading, stowage, custody, care, or proper delivery. Any such provision is void.

46 U.S.C. § 30704. The differences between the two versions are immaterial to our holding.

exclusion). Decisions from other circuits interpreting the Harter Act and enforcement of package liability limitations have also found contractual liability limitations enforceable.[8] We conclude that the Harter Act does not prohibit enforcement of the COGSA's package limitation or conflict with the package limitation.

## IV.

Starrag also argues that bills of lading in general are contracts of adhesion, requiring stricter construction against the carrier. Shippers may not avoid the package limitation, however, where the language and intent of the contract's clauses are clear. *See Mori Seiki*, 990 F.2d at 448 (rejecting contract of adhesion argument regarding extension of the COGSA package limitation and a Himalaya Clause); *Institute of London Underwriters*, 881 F.2d at 767 (noting Himalaya Clauses are matters of common usage and refusal to cover agents and independent contractors would render Himalaya Clauses "extraordinarily empty"). Therefore, the district court acted properly by applying general contract principles in finding that the COGSA package limitation also protects Maersk Pacific Ltd., and that the joint liability of the Maersk defendants is limited to $1,500.

## V.

Finally, Starrag contends that the word "delivery" in the CTBL was ambiguous, and therefore should be interpreted as limiting the package limitation to the "tackle to tackle" period. Starrag reads the phrase "or during any prior or subsequent period of carriage by water" in the CTBL in conjunc-

---

[8]*See Beaumont Export & Import Co. v. New York & Cuba Mail Steamship Co.*, 286 F. 120, 121-22 (5th Cir. 1923) (affirming enforcement of a $100 per package limitation); *Hugetz v. Compania Transatlantica*, 270 F. 90, 90-91 (2d Cir. 1920) (affirming $5 per package limitation); *Hohl v. Norddeutscher Lloyd*, 175 F. 544, 545 (2d Cir. 1910).

tion with the word "delivery" so as to end the applicability of the COGSA once the machines were placed on the dock. We, however, agree with the district court that the word "delivery," in the context of the CTBL, describes an act beyond the mere placement of goods to the dock.

[10] The courts interpret and resolve disputes concerning maritime contracts such as the CTBL according to federal law. *See Norfolk Southern*, 543 U.S. at 23 (stating "that federal law governs this contract dispute"). "Since the bill of lading is a contract of carriage between shipper and carrier, familiar principles of contract interpretation govern its construction." *Yang Ming Marine Transport Corp. v. Okamoto Freighters, Ltd.*, 259 F.3d 1086, 1092 (9th Cir. 2001) (*quoting Henley Drilling Co. v. McGee*, 36 F.3d 143, 148 n. 11 (1st Cir. 1994)). "Contract terms are to be given their ordinary meaning," and "[w]henever possible, the plain language of the contract should be considered first." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 2000). "A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous." *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004).

[11] The plain language of the CTBL states that the COGSA applies "between the time of receipt of the Goods by the Carrier at the port of loading and the time of delivery by the Carrier at the port of discharge."[9] The phrase "or during any prior or subsequent period of carriage by water" is

---

[9]Clause 5.2 of the CTBL states:

> Where loss or damage has occurred between the time of receipt of the Goods by the Carrier at the port of loading and the time of delivery by the Carrier at the port of discharge, or during any prior or subsequent period of carriage by water, the liability of the Carrier shall be determined in accordance with the 'US Carriage of Goods by Sea Act 1936' (COGSA).

phrased in the alternative, and cannot reasonably be interpreted as limiting the applicability of the COGSA to the "tackle to tackle" period. *See General Casualty Co. of Am. v. Azteca Films, Inc.*, 278 F.2d 161, 169 n. 3 (9th Cir. 1960) (concluding that use of "or" in an insurance exclusion stated alternatives and that "[t]he disjunctive is used and cannot be ignored").

Moreover, the cases discussing "delivery" under the common law, the Harter Act, and the COGSA all require more than physical delivery of the goods onto the wharf. Under general maritime common law, "to constitute a valid delivery on the wharf, the carrier should give due and reasonable notice to the consignee, so as to afford him a fair opportunity of providing suitable means to remove the goods, or put them under proper care and custody." *Richardson v. Goddard*, 64 U.S. 28, 39 (1859). The cases discussing the meaning of "delivery" under the COGSA have held that "delivery" occurs upon notification of the consignee that the goods arrived and after a reasonable opportunity for the consignee to obtain or inspect the goods.[10]

**[12]** We conclude that "delivery" for the purposes of the Short Form and CTBL had not occurred when the goods were

---

[10]*See Servicios-Exporama v. Indus. Mar. Carriers, Inc.*, 135 F.3d 984, 992 (5th Cir. 1998) (" 'Delivery' occurs when the carrier places the cargo into the custody of whomever is legally entitled to receive it from the carrier."); *Metro. Wholesale Supply, Inc. v. M/V Royal Rainbow*, 12 F.3d 58, 61 (5th Cir. 1994) (deciding that "proper delivery" occurs when the consignee has notice of arrival and a reasonable opportunity to pick up the goods.); *see also National Packaging Corp. v. Nippon Yusen Kaisha*, 354 F. Supp. 986, 987 (N.D. Cal. 1972) ("a reasonable opportunity to remove the goods or place them under proper care and custody."); *Capital Partners Int'l Ventures, Inc. v. Danzas Corp.*, 309 F. Supp. 2d 1138, 1146 (N.D. Cal. 2004) (discussing constructive delivery under both the Harter Act and COGSA, and concluding that "Goods are constructively delivered once they are placed upon a fit wharf and the consignee receives both due and reasonable notice that the goods have been discharged and a reasonable opportunity to remove them").

damaged in this case. Maersk had not given notice that the machines had arrived, or given Starrag or the Consignee an opportunity to inspect or take possession of the machines. Therefore, the language of the contract itself did not limit the application of the COGSA to the "tackle to tackle" period, and the district court properly found that the machines had not been "delivered" when the machines were damaged.

## CONCLUSION

We affirm the district court's determination that the COGSA's $500 per package liability limitation applies in this case and limits the Maersk defendants' liability to $1,500. We hold that (1) contractual extension of the terms of the COGSA, including the package limitation, beyond the "tackle to tackle" period does not conflict with COGSA; (2) the contractual extension of the COGSA does not require special notice in short form documents; and (3) the district court properly interpreted the term "delivery" in the CTBL to mean some point beyond delivery of the goods to the dock, and reasonably found that "delivery" had not occurred when the machines were damaged.

For the reasons stated above, the district court's judgment is **AFFIRMED**.