**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MAZDA MOTORS OF AMERICA, INC.
and INDEMNITY INSURANCE COMPANY
OF NORTH AMERICA,
*Plaintiffs-Appellants,*

v.

M/V COUGAR ACE, her engines,
tackle and appurtenances, in rem,
*Defendant-Appellee.*

No. 07-35787

D.C. No.
CV-07-00062-KI/
HU

OPINION

Appeal from the United States District Court
for the District of Oregon
Garr M. King, District Judge, Presiding

Argued and Submitted
March 5, 2009—Portland, Oregon

Filed May 8, 2009

Before: Susan P. Graber, Raymond C. Fisher and Milan D.
Smith, Jr., Circuit Judges.

Opinion by Judge Fisher

**COUNSEL**

Charles S. Jordan and Michelle Buhler (argued), Danielson Harrigan Leyh & Tollefson LLP, Seattle, Washington, for the plaintiffs-appellants.

Herbert H. Ray, Jr., Phillip R. Lempriere (argued) and Catharine M. Morisset, Keesal, Young & Logan, Seattle, Washington, for the defendant-appellee.

**OPINION**

FISHER, Circuit Judge:

This in rem admiralty action requires us to decide whether the defendant ocean vessel may invoke a forum selection clause in the bills of lading governing ocean carriage on that vessel. The ocean carrier that issued the bills of lading indisputably could have invoked the forum selection clause. Further, the bills of lading include a "Himalaya clause," whereby anyone assisting in performing the carriage also benefits from any contract provision designed to benefit the carrier.[1] We hold that, because the vessel assisted in performing the carriage, it is a Himalaya beneficiary that may invoke the forum selection clause. The district court dismissed this case for improper venue; we have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[1]Such clauses are named for an English case about a vessel named "The Himalaya." *See Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 20 n.2 (2004).

## I. Background

A shipment of automobiles bound for U.S. ports allegedly sustained more than $40 million in water damage while crossing the Pacific Ocean aboard the defendant vessel, the M/V COUGAR ACE. Plaintiff Mazda Motors of America, Inc., consignee of the cargo, and its subrogated insurer, plaintiff Indemnity Insurance Company of North America (collectively "Mazda"), brought this admiralty action to recover for that damage. The shipment was governed by six identical bills of lading, which established the contract between Mazda's affiliates in Asia and ocean carrier Mitsui O.S.K. Lines ("Mitsui") for transportation of the automobile cargo from Japan to various U.S. ports. As carrier, Mitsui issued the bills of lading and operated the defendant vessel, but the vessel's owner is MOB Cougar (Pte) Ltd. ("MOB Cougar"). Neither Mitsui nor MOB Cougar is a party to this lawsuit, however, because Mazda's complaint names only the M/V COUGAR ACE in rem.

Mazda filed its action in federal district court in Oregon, where the defendant vessel had been towed after it took on water. MOB Cougar made a restricted appearance to claim the vessel and defend the suit under Supplemental Rule E(8) of the Federal Rules of Civil Procedure. MOB Cougar then moved to dismiss under Federal Rule of Civil Procedure 12(b)(3) for improper venue based on the bills of lading's forum selection clause, which requires suits to be brought in Tokyo, Japan. Mazda opposed the motion, arguing that the forum selection clause, by its terms, allows only the carrier, Mitsui, to invoke its protections. In other words, the forum selection clause was intended to apply only to in personam suits, not to in rem suits like this one. The district court rejected Mazda's contract construction arguments and dismissed the suit on two alternate grounds. First, the court applied the ratification doctrine, concluding that the vessel had ratified the bills of lading by transporting the cargo, entitling it to contractual defenses in the bills of lading, including the forum selection clause. Second, the court concluded that

the vessel could invoke the forum selection clause by virtue of the Himalaya clause, which extends contractual defenses to third parties whose services contribute to performing the contract.

Mazda appeals. We review the district court's dismissal de novo because its interpretation of the forum selection clause "d[id] not turn on the credibility of extrinsic evidence but on an application of the principles of contract interpretation." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) (per curiam). We affirm the district court's dismissal under Rule 12(b)(3) because we agree that the Himalaya clause extends to the vessel the benefit of the forum selection clause. We do not reach MOB Cougar's alternative argument that the vessel may invoke the forum selection clause under the ratification doctrine.

## II.   Analysis

### A.   The Contractual Terms

**[1]** Under the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 30701, Notes Sec. 3(3) (2006) (Responsibilities and liabilities of carrier and ship), any carrier bringing goods to or from the United States in foreign trade must issue a bill of lading to the shipper of those goods. A bill of lading "states the terms of carriage, and serves as evidence of the contract for carriage." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 18-19 (2004). Here, the parties dispute the appropriate construction of several clauses in the bills of lading. Their primary disagreement concerns the scope of the forum selection clause, which states:

**LAW AND JURISDICTION**

The contract evidenced by or contained in this Bill of Lading shall be governed by Japanese law except as may be otherwise provided for herein.

> Unless otherwise agreed, any action against the Carrier thereunder must be brought exclusively before the Tokyo District Court in Japan. Any action by the Carrier to enforce any provision of this Bill of Lading may be brought before any court of competent jurisdiction at the option of the Carrier.

Mazda asserts that this clause applies by its terms *only* to suits against the "Carrier." Carrier is a defined term under the bills of lading to mean "Mitsui O.S.K. Lines, Ltd., on whose behalf this Bill of Lading has been issued." The bills of lading also define "Vessel" as the vessel named on the face of the bills of lading; here, all six bills of lading name the M/V COUGAR ACE. Mazda argues that because this is an in rem suit against the vessel, not an in personam suit against Mitsui, the plain language of the forum selection clause makes it inapplicable here.

MOB Cougar advances three arguments responding to Mazda's reading of the forum selection clause. First, MOB Cougar emphasizes that public policy favors the enforcement of forum selection clauses in international shipping contracts, even when plaintiffs would be forced to bring their claims overseas. *See, e.g.*, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972) ("The choice of that forum was made in an arm's-length negotiation . . . , and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts."). This argument is premature. Whether the forum selection clause is enforceable on public policy grounds is not before us. Rather, Mazda's argument is that the vessel may not invoke the clause by the plain terms of the bills of lading.

Second, MOB Cougar argues that Mazda's reading of the bills of lading would allow the vessel's separate legal identity to frustrate MOB Cougar's contractual right to the Tokyo forum. Mazda's in rem suit is possible only because of the "long-standing admiralty fiction that a vessel may be assumed

to be a person for the purpose of filing a lawsuit and enforcing a judgment." *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 22-23 (1960). The purpose of this legal fiction is "to allow actions against ships where a person owning the ship could not be reached." *Id.* at 23. MOB Cougar asserts that it would be perverse to allow Mazda to defeat the forum selection clause by strategically filing suit in rem. *See id.* ("A fiction born to provide convenient forums should not be transferred into a weapon to defeat that very purpose.").

**[2]** Third, MOB Cougar asserts the ratification doctrine. The parties agree that, by transporting the cargo, the vessel ratified the bills of lading — otherwise Mazda would have no basis for holding the vessel liable in rem for damage to Mazda's automobiles. *See Lykes Lines Ltd. v. M/V BBC Sealand*, 398 F.3d 319, 326 (5th Cir. 2005)("A contract of carriage was created by the acceptance of the cargo on board the SEALAND for transport and the terms of the bill of lading, even if not authorized by the vessel, set the terms of the agreement."). The parties reach different conclusions from the vessel's ratification, however. MOB Cougar successfully argued to the district court that if the vessel can be liable under the bills of lading, it should also benefit from the defenses therein, particularly the forum selection clause. Mazda counters that the bills of lading were ratified only as they were written, with a forum selection clause that applies only to in personam suits against the carrier.[2]

**[3]** We need not decide whether the forum selection clause, operating alone, applies to this in rem suit notwithstanding the absence of the term "Vessel" from that clause, because the bills of lading *also* contain a broadly worded Himalaya clause. MOB Cougar argues that the Himalaya clause enables the defendant vessel to invoke the forum selection clause, and

---

[2]Mazda makes a secondary ratification argument pertaining to whether the vessel may benefit from the Himalaya clause, which we address below.

we agree. Under the Himalaya clause, contractual provisions benefitting the carrier also benefit certain other parties. As we shall explain, the defendant vessel, which is considered a separate legal person for the purposes of this in rem suit, benefits from any provision in favor of the carrier, including the forum selection clause.

The Himalaya clause appears under the heading **"SUB-CONTRACTING AND INDEMNITY"**:

> The Merchant undertakes that no claim or allegation shall be made against any servant, agent or Sub-Contractor of the Carrier which imposes or attempts to impose upon any of them, or upon any vessel owned or operated by any of them, any liability whatsoever in connection with the Goods, and, if any such claim or allegation should nevertheless be made, to indemnify the Carrier against all consequences thereof. Without prejudice to the foregoing, every such servant, agent and Sub-Contractor shall have the benefit of all provisions herein benefiting the Carrier as if such provisions were expressly for their benefit; and in entering into this contract, the Carrier, to the extent of those provisions, does so not only on its own behalf, but also as agent and trustee for such servants, agents and Sub-Contractors.

The bills of lading specifically define each of the terms beginning with a capital letter. Mazda is the "Merchant" because it is a consignee of the goods. As explained, "Carrier" refers to Mitsui, who issued the bills of lading. "Sub-Contractor" is defined broadly, and that broad definition is crucial to our analysis.

> "Sub-Contractor" includes owners and operators of Vessels and space providers on Vessels (other than the Carrier), stevedores, terminal and groupage operators, any independent contractor directly or indi-

rectly employed by the Carrier in performance of the Carriage, their respective servants and agents, and *anyone assisting the performance of the Carriage.*

(Emphasis added.) In turn, " 'Carriage' means the whole or any part of the operations and services undertaken by the Carrier in respect of the Goods under this Bill of Lading."

**[4]** To decide whether the defendant vessel is covered by the Himalaya clause, we apply general contract interpretation principles, because a bill of lading is a contract like any other. *See Starrag v. Maersk, Inc.*, 486 F.3d 607, 616 (9th Cir. 2007). Particularly, the Supreme Court has rejected a rule of narrow construction for Himalaya clauses, holding that the plain language of such a clause is the best evidence of the parties' understanding of which other entities may invoke the carrier's contractual defenses. *See Kirby*, 543 U.S. at 31-32.

## B.    The Himalaya Clause's Coverage

MOB Cougar argues that the defendant vessel M/V COUGAR ACE, being personified for the purposes of this in rem suit, is an "agent, servant or Sub-Contractor" of the "Carrier" under the plain meaning of the Himalaya clause. Given the definition of Sub-Contractor under the bills of lading, we agree. The defendant vessel is therefore entitled to invoke the forum selection clause as a defense that would be available to the Carrier.

**[5]** Although we are most concerned with the second sentence of the Himalaya clause, which extends the Carrier's contractual defenses to Sub-Contractors, we begin with the first sentence because it sets out the types of claims to which the clause applies. The first sentence purports to forbid claims against any "servant, agent or Sub-Contractor" that would impose liability on them "or upon any *vessel* owned or operated by any of them." (Emphasis added.) MOB Cougar conceded at oral argument that this complete disclaimer of the

vessel's liability is unenforceable under COGSA. *See* 46 U.S.C. § 30701 Notes Sec. 3(8) ("Any clause . . . relieving the carrier or the ship from liability for loss or damage to or in connection with the goods arising from negligence, fault, or failure in the duties and obligations provided in this section . . . shall be null and void and of no effect."). Even if substantively unenforceable, however, the first sentence leaves no doubt that the Himalaya clause applies to suits that would impose liability on a vessel, such as the in rem suit here. The substance of the Himalaya clause is found in the second sentence, which states that all provisions benefitting the Carrier also benefit Sub-Contractors "as if such provisions were expressly for their benefit." By agreement, Sub-Contractor includes "anyone assisting the performance of the Carriage." The parties' use of inclusive language — "*anyone*" — unambiguously evidences their intent to extend provisions benefitting the Carrier to a wide group of entities. *See Kirby*, 543 U.S. at 31-32 (noting the expansive plain meaning of "any"). Applying this definition, we hold the defendant vessel is a Sub-Contractor because it plainly assisted the performance of the Carriage; as the carrying vessel, it was indispensable to that performance. Mazda does not dispute that the forum selection clause is a "provision[ ] . . . benefitting the Carrier," so we see no reason why the forum selection clause should not also benefit the defendant vessel here.

**[6]** Our cases interpreting Himalaya clauses support this reading. To decide whether an entity benefits from a Himalaya clause, "the proper test is to consider 'the nature of the services performed compared to the carrier's responsibility under the carriage contract.' " *Akiyama Corp. of Am. v. M.V. Hanjin Marseilles*, 162 F.3d 571, 574 (9th Cir. 1998) (quoting *Taisho Marine & Fire Ins. Co. v. Vessel Gladiolus*, 762 F.2d 1364, 1367 (9th Cir. 1985)). The Himalaya clause in that case also applied to every "servant, agent and sub-contractor," and the clause's language extending defenses to other parties was identical to the clause here. *See id.* at 573. We held that a terminal operator and a stevedore fell under the Himalaya clause

because "subcontractor" included terminal operators and stevedores by definition and because the services those parties provided were the same as the services the carrier promised to perform. *See id.* at 574. The corresponding defined term here is "Sub-Contractor," which is defined broadly enough to include the defendant vessel. Further, the ocean carriage the vessel provided was precisely the same as Mitsui's chief responsibility under the bills of lading. Therefore, the COUGAR ACE, not unlike a stevedore, is "directly related to the carrier's responsibilities under the carriage contract" and can benefit from the Himalaya clause. *Mori Seiki USA, Inc. v. M.V. Alligator Triumph*, 990 F.2d 444, 450 (9th Cir. 1993).

**[7]** The Supreme Court's holding in *Kirby* also supports our interpretation of the bills of lading. The Himalaya clause in *Kirby* also extended contractual protections to any entity "whose services contribute to performing the contract." *Kirby*, 543 U.S. at 31. The Court held this expansive language must include a land carrier because the contract called for transportation to an inland destination in Alabama, 366 miles from the port. "Thus, the parties must have anticipated that a land carrier's services would be necessary for the contract's performance." *Id.* at 32. Here, the defendant vessel's services were even more obviously necessary for completion of the carriage; the parties must have anticipated that the vessel's services would be necessary for performing a contract for ocean carriage.

Mazda insists this reading of the Himalaya clause subverts the parties' intent because the Himalaya clause does not include "Vessel" alongside "servant, agent or Sub-Contractor." Citing a district court case, Mazda urges a familiar canon of construction: that the "conspicuous omission" of a defined entity from "the exhaustive list of third parties to whom the ocean carrier's protections extend speaks as loudly as an explicit exclusion." *Sun-Bar Materials Int'l, Inc. v. Am. President Lines, Ltd.*, 1993 A.M.C. 2639, 2643 (N.D. Cal. 1993). We reject Mazda's proposed construction because the

Himalaya clause and its incorporated definition of Sub-Contractor are unambiguous. *See Inst. of London Underwriters v. Sea-Land Serv., Inc.*, 881 F.2d 761, 767 (9th Cir. 1989) (rejecting maritime plaintiff's canon of construction because the Himalaya clause was unambiguous). Under the circumstances, "[t]here is no reason to contravene the clause's obvious meaning." *Kirby*, 543 U.S. at 31-32. Moreover, refusing to apply the Himalaya clause to the defendant vessel because the otherwise unambiguous clause does not specifically name the "Vessel" would contravene *Kirby*'s rule that Himalaya clauses need not be drafted with "linguistic specificity."[3] *Id.*

Mazda also stresses that neither party cited any case in which a vessel sued in rem was deemed a Himalaya beneficiary. This may be a function of the relatively recent rule of interpreting Himalaya clauses without regard to special rules of linguistic specificity. *See Kirby*, 543 U.S. at 30-31. Pre-*Kirby*, we strictly construed Himalaya clauses and required a "clear and unequivocal intent" to extend the carrier's contractual defenses to a readily identifiable entity. *Taisho*, 762 F.2d at 1367. Now, absent any special rule of strict construction, we enforce the bills of lading as drafted and in accordance with their inclusive list of Himalaya beneficiaries. Further, the ultimate result here — that the defendant vessel may invoke the forum selection clause — is not unprecedented. *See Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*, 408 F.3d 1250,

---

[3]We reject Mazda's related argument that deeming the defendant vessel a "Sub-Contractor" under the bills of lading would render other terms in the bills of lading meaningless. Mazda argues that the Himalaya clause disclaims Sub-Contractor liability, so if the Vessel is also a Sub-Contractor, other references in the bills of lading to the Vessel's liability would be nonsensical. Mazda is mistaken. As is clear from the second sentence of the Himalaya clause and MOB Cougar's explanation at oral argument, the parties contemplated that the liability disclaimer would be unenforceable and provided for that contingency. Thus, references to the Vessel's liability are not meaningless in light of the probability that courts applying COGSA would refuse to enforce the Himalaya clause's disclaimer. *See* 46 U.S.C. § 30701 Notes Sec. 3(8).

1253, 1255 (9th Cir. 2005) (enforcing a forum selection clause that applied to "any and all action concerning custody or carriage" (emphasis omitted)); *Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1337 (9th Cir. 1997) (enforcing a forum selection clause that applied to "any claim or dispute").[4]

Finally, Mazda argues that the vessel cannot be a Himalaya beneficiary because Himalaya clauses are "used to extend a carrier's defenses and liability limitations to certain *third parties* performing services on its behalf." *Mori Seiki*, 990 F.2d at 450 (emphasis added). Here, the parties agree that the vessel ratified the bills of lading by transporting the cargo, which Mazda argues made the vessel a *first party* to those bills of lading. The district court, in dismissing this suit, also noted the logical difficulty in the vessel's status as both a first and third party to the bills of lading.[5]

**[8]** We disagree that merely transporting the cargo made the vessel a party to the bills of lading. At oral argument, Mazda cited the Fifth Circuit case *Lykes Lines*, 398 F.3d at 325, which recites the general ratification rule.

> When cargo has been stowed on board the vessel and bills of lading are issued, the bills of lading become binding contracts on the vessel *in rem* upon the sailing of the vessel with the cargo. The sailing of the

---

[4]Our holding is also consistent with the strong judicial preference for enforcement of forum selection clauses in admiralty cases. *See, e.g.*, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ("[T]he forum selection clause should control absent a strong showing that it should be set aside."); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (upholding a forum selection clause in a passenger cruise line's ticket); *Fireman's Fund*, 131 F.3d at 1340.

[5]Because we affirm on the basis of the Himalaya clause, we do not reach MOB Cougar's separate ratification argument — that by accepting the cargo, the defendant vessel was entitled to invoke any defense in the bills of lading, regardless of the Himalaya clause.

vessel constitutes a ratification of the bills of lading. This action gives rise to a maritime lien which is the basis of the *in rem* recovery.

*Id.* (quoting *Cactus Pipe & Supply v. M/V Montmartre*, 756 F.2d 1103, 1113 (5th Cir. 1985) (citations omitted)). We have found no Ninth Circuit case directly mentioning the ratification doctrine, but in *All Pacific Trading, Inc. v. Vessel M/V Hanjin Yosu*, 7 F.3d 1427, 1433 (9th Cir. 1993), we also held that "[w]hen a cargo owner has a direct contractual relationship with the operator of a vessel, the cargo owner has a lien on the vessel for any injury caused by the operator's lack of due diligence." *See also Osaka Shosen Kaisha v. Pac. Export Lumber Co.*, 260 U.S. 490, 499 (1923). Thus, Mazda is correct that ratification binds the vessel to the terms in the bills of lading, but not because the vessel somehow becomes a party. Rather, the cargo owner's basis for in rem recovery is a maritime lien, a security interest arising from the transportation of goods. *See* 2 Benedict on Admiralty § 43, at 3-48-49 & n.12 (7th ed. rev. 2008) ("[I]t is not the existence of a lawful contract of affreightment but the transport of goods under it that marks the commencement of the lien." (citing *Osaka Shosen Kaisha*, 260 U.S. 490)). The defendant vessel's ratification is therefore no obstacle to its status as a Himalaya beneficiary.

## III.  Conclusion

**[9]** In sum, we uphold the contracting parties' intent as expressed in the bills of lading and allow the defendant vessel to invoke the forum selection clause as a Himalaya beneficiary. We must give effect to the contracting parties' use of inclusive language to benefit "anyone assisting the performance of the Carriage," so we reject Mazda's proposed construction, which would require the "Vessel" to be named in the Himalaya clause. *See Kirby*, 543 U.S. at 32 (citing *Green v. Biddle*, 21 U.S. (8 Wheat.) 1, 89-90 (1823)). The district court therefore correctly dismissed Mazda's in rem suit

because the defendant vessel could invoke the Tokyo forum selection clause as though it were drafted for its benefit.

**AFFIRMED.**