**INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA; Lexington Insurance Company, Plaintiffs–counter–defendants–Appellees,**

v.

**CITY OF LONG BEACH, a municipal corporation, Defendant–counter–claimant–Appellant.**

v.

**City of Long Beach, a municipal corporation, Defendant–counter–claimant–Appellee.**

**Nos. 07–56026, 07–56397.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 16, 2009.

Filed July 17, 2009.

Susan Koehler Sullivan, Douglas J. Collodel, Esquire, Sedgwick Detert Moran & Arnold, LLP, Los Angeles, CA, for Insurance Company of the State of Pennsylvania, Lexington Insurance Company.

Ricardo Echeverria, Russell G. Petti, for City of Long Beach.

Before: CANBY, RAWLINSON and N.R. SMITH, Circuit Judges.

MEMORANDUM *

The City of Long Beach seeks coverage under insurance policies issued by the Insurance Company of the State of Pennsylvania and Lexington Insurance Company ("the Insurers") for payments that the City made to settle a suit brought under the Fair Housing Act, 42 U.S.C. §§ 3601–3619 ("the FHA action"). The policies provided that the Insurers would indemnify the City, within certain limits, for loss the City was obligated to pay "as damages." The City appeals the district court's decision that attorney's fees are not damages, and thus are not covered by the policies. The City also appeals the court's use of the last, rather than an earlier, judgment entered in the FHA action to determine the percentage of post-judgment costs and interest that the Insurers were required to cover. The Insurers have cross-appealed the district court's decision that the Insurers were liable under the policies. We affirm in part and reverse in part.

## I. Coverage Under the Policies

The policies cover a portion of the City's liability for loss that is caused by an "occurrence," which is defined as "an accident or event ... which results in personal injury, property damage, or public officials errors and omissions neither expected nor intended from the standpoint of the insured." The policies, by including the term "events" within an occurrence, cover intentional acts which cause harm unintended by the insured. *United Pac. Ins. Co. v. McGuire Co.*, 229 Cal.App.3d 1560, 1566, 281 Cal.Rptr. 375 (Cal.Ct.App.1991) (When a policy "occurrence" includes an accident or event, "coverage [exists] for intentional actions (subject to the statutory limitations of Ins.Code, § 533) that result in [damages] but excludes coverage for those elements of damages that were expected or intended by the insured."). The district court held that coverage existed because the City had not intentionally caused the harm suffered in the underlying FHA action-its employees had. We review its findings of fact for clear error, and we affirm this ruling. *Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 843 (9th Cir.2004).

■ The court did not clearly err when it found that the individual defendants who were held to have intentionally harmed the FHA plaintiffs were not authorized to act or make policy on behalf of the City. The district court found that the two Councilmen were not authorized to act on behalf of the City outside of their legislative capacity. The district court further found that the Building Superintendent was not a final policy-maker because the City Charter provided that the City Manager was ultimately responsible for the building department. *Id.* The record contains sufficient evidence to support both of these findings; they are not clearly erroneous. Contrary to the thrust of the Insurers' argument, the fact that City officials or employees may have inflicted intentional harm is not sufficient to impute that intent to the City to defeat coverage under the policies' "occurrence" clause.

The court also correctly found that there was no evidence that the City had directly intended to harm the FHA plaintiffs. Prior to trial in the FHA action, the trial court had granted summary judgment holding that the City was not directly liable under 42 U.S.C. § 1983. In so holding, that court necessarily ruled that the City

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

had not acted pursuant to formal policy, that any persons who acted unconstitutionally were not officials with final policy-making authority, and that no final policy-making official had ratified the unconstitutional action. *See Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir.1992). Moreover, during the district court's bench trial in the present case there was substantial testimony indicating that the City officers had lawful reasons to take all of their actions that gave rise to the FHA action. The district court's factual findings negating direct liability of the City were not clearly erroneous.[1]

Because the district court properly found that the City was only vicariously, not directly, liable for the harm caused to the FHA plaintiffs, and that the City did not harm intentionally, the harm for which the City was required to pay was "neither expected nor intended from the standpoint of the insured," the City. The district court accordingly was correct in determining that the loss was the result of an "occurrence" within the meaning of the Policies. We affirm this ruling of the district court.

## II. The Insurers' Liability for Attorney's fees

█ The policies provide coverage for the City's "ultimate net loss," which is the amount that the City must pay "as damages by reason of a judgment or a settlement." On de novo review, we hold that the attorney's fees awarded in the underlying FHA action constitute "damages" under the Policies, and thus reverse the district court on this point. *Clausen v. M/V*

*New Carissa*, 339 F.3d 1049, 1062 (9th Cir.2003).

California construes language in an insurance contract that is not "clear and explicit" against the drafter—usually the insurer—and reads the contract expansively, in favor of coverage. *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822, 274 Cal.Rptr. 820, 799 P.2d 1253 (Cal.1990) (holding that an insurance policy covered "as damages" the costs associated with complying with an injunction and/or a reimbursement order for environmental clean-up expenses). The district court did not follow this approach to contract interpretation, relying instead on *Cutler–Orosi Unified Sch. Dist. v. Tulare Co. Sch. Dists. Liability*, 31 Cal.App.4th 617, 37 Cal. Rptr.2d 106 (Cal.Ct.App.1994), to hold that as a matter of California law, attorney's fees are not damages. *Cutler–Orosi*, however, relied in part on the fact that the federal statute under which fees were awarded explicitly referred to attorney's fees as "costs." 42 U.S.C. § 1973*l*(e). In the present case, however, the applicable statute authorized the court to award "a reasonable attorney's fee *and* costs." 42 U.S.C. § 3613(c)(2) (emphasis added). *Cutler–Orosi*, in distinguishing a case that viewed attorney's fees as damages, stated that such language "obviously distinguished attorney fees from costs." *Cutler–Orosi*, 31 Cal.App.4th at 633, 37 Cal. Rptr.2d 106.

We conclude, therefore, that *Cutler–Orosi* does not control our case. We rely instead on an analogous decision holding that attorney's fees were "damages" within

---

1. This conclusion renders moot the Insurers' argument that Cal. Ins.Code § 533 bars coverage. Section 533 provides that "[a]n insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." But this bar to coverage does not apply when the insured is only vicariously liable for the intentional harm of others. *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal.4th 291, 305 n. 9, 48 Cal.Rptr.2d 510, 907 P.2d 358 (1995). Because the district court properly found that the City was only vicariously liable under the FHA for the discrimination against the FHA plaintiffs, § 533 does not bar coverage.

278

the meaning of a contractual indemnity clause, *Golden Eagle Ins. Co. v. Ins. Co. of the West,* 99 Cal.App.4th 837, 842, 121 Cal.Rptr.2d 682 (Cal.Ct.App.2002). And more generally, we rely on the principle announced by the California Supreme Court in *AIU Ins. Co.* that, when language in a policy remains ambiguous even after the expectations of the parties have been considered, the ambiguity is generally resolved in favor of coverage. *AIU Ins. Co.,* 51 Cal.3d at 822, 274 Cal.Rptr. 820, 799 P.2d 1253. Here, because the word "damages" is not defined in these policies, and cases nationwide have differed on whether it may include attorney's fees, *see Cutler–Orosi,* 31 Cal.App.4th at 631, 37 Cal. Rptr.2d 106, the term in context is not clear and explicit. Therefore, we interpret the policies in favor of coverage for the attorney's fees as damages.[2]

### III. The Insurers' Liability for Post–Judgment Costs and Interest

■ The policies require that, where a judgment exceeds the specified limit, "the [Insurers] shall pay defense costs and interest accruing on [that] judgment after its entry . . . in a ratio which its proportion of the liability for the judgment rendered . . . bears to the entire amount of [that] judgment." Here, there was one judgment that was entered in the amount of $22.5 million, and later, after the parties had negotiated a settlement, a different judgment was entered in the amount of $20 million. The district court concluded that this last judgment should be used to determine the Insurers' proportion of post-judgment costs and interests. On de novo review of this contractual interpretation question, we affirm. *Starrag v. Maersk, Inc.,* 486 F.3d 607, 611 (9th Cir.2007).

The first judgment, once vacated, could not be regarded as the "judgment rendered" within the meaning of the policies' provision. *See Ditto v. McCurdy,* 510 F.3d 1070, 1077 (9th Cir.2007) ("When a judgment has been set aside . . ., the case stands as if that judgment had never occurred in the first place."). Therefore, the district court could not have used the $22.5 million figure once it had been vacated, and the amount of post-judgment costs and expenses were only determined after that event. The judgment that the City was obligated to pay was the $20 million judgment finally entered. The district court did not err in apportioning the Insurers' liability for defense costs and interest on the basis of that judgment.

For these reasons, we **AFFIRM** the court's ruling (the subject of the cross-appeal) that coverage existed under the Policies; we **REVERSE** the ruling that coverage for damages did not include attorney's fees; and we **AFFIRM** the use of the ultimate settlement figure paid by the City to determine the Insurers' liability for post-judgment costs and interest. The Insurers shall pay the City's costs on appeal.

**AFFIRMED in part; REVERSED in part; REMANDED.**

RAWLINSON, Circuit Judge, concurring:

I concur in the result.

---

**2.** This conclusion renders moot the Insurers' argument on cross-appeal that coverage under the Policies was improper because the City had not exhausted its own insurance policy of $12 million.